Witkofski, Appellant, *v.* Daniels et al.

Argued January 25, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*R. L. Levy,* with him *Leon M. Levy,* for appellant.

*Walter L. Hill,* of *O'Malley, Hill, Harris & Harris,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 21, 1938:

On May 11, 1934, the Pennsylvania Indemnity Corporation issued a policy of insurance to Charles Daniels. The subject of insurance was a 4-cylinder Ford Roadster of 1931. The thing insured against was the possibility of any pecuniary loss "imposed by law upon insured by reason of the ownership, maintenance, use or operation during the term of this policy of any automobile described in the schedule of warranties for damages, on account of bodily injuries and death accidentally suffered or alleged to have been suffered by any person or persons not hereinafter excepted." "The limit of liability for damages in respect to any one accident involving personal injury and/or death shall not exceed $10,000, subject to a limit of $5,000 for any one person."

The policy also covered persons operating the car with the insured's consent.

The consideration named in the contract of insurance was "the payment of the premiums specified in, and the statements contained in, the Schedule of Warranties attached" to the policy and made a part thereof. Among the warranties of the insured is the following: "11. Cost to owner, $525. Purchased used, 1932. 12. The automobile described is fully paid for by the Insured and is not mortgaged or otherwise encumbered."

The policy provided: "Any assignment of interest or other change hereunder (except by death of Insured) whether voluntary or involuntary, shall render this policy void unless consented to by endorsement hereon. This policy shall be void if Insured or his agent conceals or misrepresents, in writing or otherwise, any fact or circumstance in connection herewith, or makes attempt to defraud Company before or after loss."

On June 18, 1934, by endorsement on the policy, the coverage was changed to a "1934 Ford 8 Coupe." A "trading in" of the 1931 car for the 1934 car with the Adair Motor Car Company was made by *Henry* Daniels, a brother of *Charles* Daniels, the insured. Henry testified that he "turned it in" with his brother's permission, that "about $150" was allowed for the 1931 car, and that he put "a small cash settlement with it as a down payment." Henry had, by virtue of his brother's consent, possession and right of possession of the 1934 car. The title to this car was in the Adair Motor Company. The latter "rented" the car to Henry Daniels for $161 on or before delivery," leaving a "deferred rental" of $576, which lessee promised to pay at the office of Universal Credit Company in installments of $32 each month. After all payments had been made as agreed, the lessee, Henry Daniels, had the right to purchase the car for one dollar. Forty-one days after the contract of bailment, the title to the car was transferred by the Adair Motor Company, the bailor, to *Charles* Daniels,

subject to an encumbrance of $576, and the title was in him at the date of the accident giving rise to this suit.

On October 22nd, Sidney Witkofski, while a passenger in the new car and while it was being driven by Henry Daniels, was injured. He sued Henry Daniels as operator by owner's consent and recovered in an uncontested action a judgment for $5,500 with interest from March 21, 1935, and costs.

An attachment execution then issued against "the effects of the defendant, Henry Daniels, in the hands of the Garnishee, Pennsylvania Indemnity Corporation." In answer to interrogatories, the insurer claimed that the contract of insurance relied on by the plaintiff was *in*operative from and after June 18, 1934, "in that the automobile involved in the accident . . . belonged to Henry E. Daniels and not Charles P. Daniels, the named insured." Garnishee averred that the policy relied on "was not in force on the 22nd day of October, 1934 [the date of the accident] . . . and there is no amount whatsoever due from the garnishee either to the plaintiff or to the defendant."

The case was submitted to a jury subject to a reserved point, and a verdict rendered in favor of the plaintiff and against the garnishee, in the sum of $5,000. Garnishee's motion for judgment n. o. v. was granted. This appeal followed.

The court below said that "the 1931 Ford car was purchased by Henry Daniels in 1932 or 1933 and in 1934 the coverage of the policy was changed on the original 1931 Ford to the 1934 Ford, a car purchased new. No notice was ever given to the garnishee of change of ownership, and the certificate of title was issued to Charles P. Daniels." The court held that since there was no endorsement on the policy as to change of ownership to Henry Daniels, the action of the insured in permitting the change of ownership to Henry Daniels was an invalidating violation of the "assignment of interest clause" in the policy.

This record discloses that the Indemnity Corporation insured a car which was *owned* by *Charles Daniels* and which was represented as having *cost $525* and as being *unencumbered.* The substituted coverage of June 18, 1934, was also on a car alleged to be owned by Charles Daniels and which "cost $632." It is true that the letter from the District Manager to Charles Daniels under date of June 18, 1934, does not specifically describe him as the owner but that is its clear implication, for in the policy to which the letter specifically refers "No. Duplicate 831795," Charles was described as the owner and the only change of which the company had notice, as indicated by its letter, was that the new car was a "1934 Ford 8 Coupe" whereas the car first insured was a 4-cylinder Ford Roadster of 1931. The only change in the policy which the Indemnity Corporation consented to, was a change *in the type of car insured.* No change in car ownership was asked for or consented to. Neither did the insurer consent to insure an *encumbered* car.

The Adair Motor Company, the *owner of a "1934 Ford 8 Coupe,"* leased that car to Henry, with the right in the latter "of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in [Henry Daniels] the conditional vendee or lessee." That situation made Henry Daniels the "owner" of that car, under the provisions of section 102 of the Act of May 1, 1929, P. L. 905, 906. It therefore follows that the contract of insurance was modified by the "transfer of coverage" on June 18, 1934, on the erroneous supposition that Charles owned the new car as he had owned the old car. At that moment the policy of insurance was invalidated, according to its express terms, as no such assignment of interest had been consented to by the insurer or evidenced by endorsement on the policy. The transfer 41 days later by the Motor Company of *title* of the new car to Charles Daniels, subject to an encumbrance of $576, could not serve to revive this policy.

Furthermore, all Charles Daniels later acquired in respect to the 1934 Ford 8 was a certificate of title to it, while Henry had the right of possession, and the Adair Motor Car Company had an encumbrance of $576 on it. Under the Motor Vehicle Act (supra), Henry, the conditional vendee, was in legal contemplation the car's owner. The policy insured an *unencumbered* car of which Charles Daniels was the owner. The instrumentality of the accident was no such car. When a company insures any man in respect to the ownership and operation of a motor vehicle, it is concerned with its ownership and whether or not it is encumbered. It makes preliminary inquiries as to these facts and, in the instant case, the answers to these inquiries were expressly made warranties. When Charles Daniels applied for transfer of coverage so as to substitute the 1934 car "cost $632" for the 1931 car "cost $525," he made no statement as to any change in his status as owner and no statement as to encumbrances. The company therefore had a right to assume that there was no change in these essential factors of the policy. When A and B enter into a contract and B later asks for a modification of an item in that contract and A consents to it, the modified contract is precisely the same as the old contract in every respect, excepting the item modified. In Couch's Cyclopedia of Insurance Law, Vol. 6, section 1384, page 4974, appears the following: "The reformed contract contemplates that the other terms and conditions shall continue and apply to the reformed policy, and that it shall differ only as to the matters upon which the parties have agreed."

Appellant says: "The contract was valid because it is not necessary in a policy of this character that the named assured have the title to the car covered by the policy. The named assured can have an insurable interest, although the title in the car is in a third person," and "the fact that the named assured did not have the legal title to the car did not violate any clause of the

contract." The error therein is this: When Charles Daniels applied for insurance he described his "insurable interest" in the car as that of *"owner."* Paragraph 11 so refers to him: "Cost to owner, $525." The insurer entered into a contract with him as "owner," which word when unqualified means *sole* owner. When the District Manager's letter of June 18, 1934, "acknowledged receipt of advice regarding transfer of coverage under the above policy [identifying it by number]," it is a legitimate assumption that if the insured had "advised" the company of any change in his interest in the car from that of sole owner, without encumbrance, to something less, this change would have been noted in the new coverage agreement. When the insured's relation to the car became reduced from *sole* ownership, it was his duty to obtain, if he could, the company's consent to such "assignment of interest or other change," or suffer the invalidation of his policy. The insurer had the right to determine whether it would insure Charles Daniels as *part* owner. The company might well have decided to accept as an insured Charles Daniels *only as sole owner* of the car, for it is axiomatic that what men own exclusively, they specially protect and care for. A car owned by an acceptable individual as *sole* owner may not be as much of a risk to an insurance company as the same car owned by the acceptable individual *and* others. Any misrepresentation as to the insured's "insurable interest" in the thing insured is a breach of warranty.

Appellant also falls into error in contending that "it was never in the contemplation of the insurer that title to the car would be in the named insured." Appellant quotes the policy as protecting the insured "against loss, for any liability imposed by law upon insured *by reason of the ownership, maintenance, use or operation* during the term of this policy of any automobile described in the schedule of warranties," and then says: "It will thus be seen that the policy was one intended to indem-

nify the named assured from any loss which might be sustained as a result of the use or operation of any car described in the policy. From this it follows the named assured could cover himself under the policy for loss resulting from the use or operation of any specified car." This reasoning is based on an attempted oversimplification of the contract. The latter did not absolutely insure Charles Daniels against any loss he might sustain as a result of the use or operation of any car described in the policy. There were several *provisos* attached to that promised indemnification. One was that the statements contained in the Schedule of Warranties were true and another was that no "assignment of interest or other change hereunder" shall be made by the insured "unless consented to by endorsement hereon."

When Charles substituted the 1934 car for the 1931 car in his application for new coverage without disclosure of his altered legal status in respect to that car, his "warranties" were ipso facto breached. When he gave his 1931 car to Henry for trading purposes, that was an "assignment of interest" which rendered his policy void. What was void did not become valid by Charles getting a "certificate of title" to the 1934 car 41 days later. It is not necessary to decide whether or not if he had 41 days later become *sole owner* of this 1934 car, his "dead" policy would have been thereby legally revitalized, for the fact is that he did not become *the* owner of that car, but his "ownership" *(if any)* was qualified and attenuated by the paramount rights in respect to that car which vested in the Adair Motor Car Company and in Henry Daniels as conditional vendee, who under our Motor Vehicle Code is "deemed the owner" and the owner is the only person "entitled to have the same titled in his name."

Appellant concedes that if the insured attempted to transfer the policy of insurance to his brother, a valid transfer could only be had with the written consent of the insurer. It is *equally* clear that under the express

terms of the policy "any assignment of interest or other change" in the legal status of the thing insured made the policy void. It is *equally* clear that misrepresentation occurred when the coverage of the 1934 car was applied for, without any disclosure that the insured's legal relationship to this car *was not the same* as he had in his application represented it to be to *the car to be insured.* What President Judge RICE said in *Olyphant Lumber Co., to use, etc., v. Peoples Mutual Live Stock Ins. Co. of Phila.,* 4 Pa. Super. Ct. 100, 104, is applicable here: "The policy is not an insurance of the specific thing without regard to its ownership but is a special agreement of indemnity with the person insuring against such loss or damage as he may sustain. . . . The insurer has a right to choose the persons with whom he will contract. . . ." In the instant case the insurer not only chose to contract with Charles Daniels but it chose to contract with him in respect to the ownership, maintenance, use and operation of a motor vehicle of which he was *the owner* and on which there was *no lien or encumbrance.* The automobile which was the instrumentality of the tort had to Charles Daniels, "the insured," a legal relationship so vitally different from that set forth in his contract as to make the latter of no avail to the tort's alleged victim.

The judgment is affirmed.