## Sun Pipe Line Co. v. Smith

*William P. Manning, Jr.*, for plaintiff.
*Milton Jacobson*, for defendant.

FORREST, J., July 17, 1957.—Plaintiff filed its complaint in equity seeking an injunction restraining defendant from interfering with plaintiff's construction of a pipeline paralleling an existing pipeline on the property of defendant. Defendant filed her answer and new matter, and plaintiff filed a reply and amended or supplemental reply.

The issue is whether a certain right of way agreement, as modified by a supplemental agreement, entitles plaintiff to construct a second pipeline paralleling the existing pipeline as relocated in accordance with the supplemental agreement, or whether it only

entitles plaintiff to construct a second pipeline paralleling the pipeline as originally laid.

### Findings of Fact

1. On September 24, 1934, defendant, Sarah Smith, and her husband, James C. Smith, were owners as tenants by entireties of a certain parcel of land more particularly described in paragraph no. 3 of the complaint filed in this case.

2. On said date, James C. Smith and defendant entered into a written agreement with Susquehanna Pipe Line Company, subsequently renamed Sun Pipe Line Company, whereby defendant and her said husband granted to Susquehanna Pipe Line Company, its successors and assigns, a right of way easement, with the right to lay a pipeline and maintain, operate, repair and remove said line, over, upon, under and across the lands of defendant and her husband. The agreement also provided:

"It is hereby further agreed that the said grantee, its successors and assigns, in the use of the right-of-way easement herein granted, may at any time lay, . . . such additional lines as it may desire alongside the first line laid, upon the payment of the same amount for each such additional line to be laid as that shown in grantor's receipt bearing even date herewith to have been paid for the right-of-way easement herein granted and subject to the further payment of damages as provided herein. . . ."

The agreement specified that plaintiff would pay damages which may arise to crops, fences, trees or buildings on the lands from the installation of the pipeline or lines provided for. The agreement was recorded in the Office for Recording Deeds in and for Montgomery County in Deed Book No. 1184, page 525. The receipt given by the grantees showed a payment of $95 as full consideration.

3. In 1936, plaintiff constructed a pipeline, a portion of which extended from the front of defendant's property to its rear, a distance of approximately 1,900 feet.

4. In 1953, The Pennsylvania Turnpike Commission contemplated the construction of the eastern extension of the turnpike from King of Prussia to the Delaware River. Part of the pipeline on the Smith property fell within the 200-foot wide right of way acquired by the turnpike commission.

5. As a result of a request to relocate the pipeline, plaintiff entered into negotiations with defendant, her husband having died, and on March 27, 1953, the parties hereto entered into a written agreement, reciting, inter alia,

"WHEREAS, the parties hereto *desire that the pipe line presently operated* by grantee across the said property *be relocated* because of the proposed construction of a highway by the Pennsylvania Turnpike Commission", and containing operative clauses as follows:

"1. *Grantee shall relocate its pipe line* over, upon, under and across the said lands of grantor along a course located parallel to the southerly boundary of the proposed turnpike at a distance of ten feet south of the said southerly boundary.

"2. Within a reasonable time after the relocation of the pipe line as herein provided, grantee, at its sole cost and expense, may remove any and all of the pipe, equipment and appurtenances thereto installed in the former location.

"3. *All of the terms and provisions of said right-of-way agreement of September 24, 1934, except as modified and amended by this Agreement, shall remain in full force and effect.*" (Italics supplied).

6. The pipeline was relocated in accordance with the agreement of March 27, 1953.

7. Plaintiff desires to construct, operate and maintain an additional pipeline alongside the existing relocated pipeline.

8. Plaintiff has tendered to defendant its check in the amount of $95 as consideration for the exercise by plaintiff of its alleged right to lay, maintain and operate an additional pipeline over, upon, under and across the premises of defendant. Defendant has refused such tender and notified plaintiff that any entry on plaintiff's property for the purpose of laying an additional pipeline elsewhere than alongside the first line as originally located will be considered a trespass.

### Discussion

The decision in this case depends upon the construction of the documents dated September 24, 1934, and March 27, 1953. "The extent of the grant(s) that (were) made in the ... (deed and agreement) depends entirely upon the intent of the parties as determined by a fair interpretation of the language employed and consideration of all the attendant circumstances": Marantha Settlement Association, Inc., v. Evans, 385 Pa. 208, 210 (1956). The deed conferred upon the pipeline company a right to lay a pipeline together with the right to lay additional lines along the first line laid. The latter agreement required the company to relocate the one pipeline which it had laid. That pipeline was relocated so as to run alongside the newly constructed turnpike rather than under it. Now the company desires to lay a second line alongside the relocated first line. Defendant contends that the company has the right to lay the additional line alongside the original course of the first line, but not alongside the relocated line.

Under the agreement of 1953, the first pipeline was relocated, but such relocated line, nonetheless, within the intent and purpose of the parties as expressed by

the combined agreements, must be deemed to have been contemplated by the parties as the "first line laid". "When A and B enter into a contract and B later asks for a modification of an item in that contract and A consents to it, the modified contract is precisely the same as the old contract in every respect, excepting the item modified . . . 'The reformed contract contemplates that the *other terms* and conditions *shall continue and apply to the reformed (contract)*, and that it shall differ only as to the matters upon which the parties have agreed' ": Witkofski v. Daniels, 329 Pa. 452, 457 (1938) (Italics supplied). It follows that plaintiff is entitled to build a second pipeline along this relocated first line laid.

### Conclusions of Law

1. Equity has jurisdiction.

2. Having tendered the agreed consideration of $95, plaintiff has an easement to lay an additional pipeline alongside the existing pipeline on premises of defendant.

3. Plaintiff is entitled to an injunction restraining defendant from interfering with plaintiff's construction, maintenance, operation, repair and removal of such additional pipeline.

4. Plaintiff should pay the agreed consideration of $95 to defendant.

5. Plaintiff should pay the costs.

### Decree Nisi

And now, July 17, 1957, it is ordered, adjudged and decreed that defendant, Sarah Smith, is hereby restrained from interfering with the construction, maintenance, operation, repair and removal by plaintiff, Sun Pipe Line Company, its successors and assigns, of a second pipeline alongside the existing pipeline on premises of defendant more particularly described in paragraph no. 3 of the complaint filed in this case.

Plaintiff shall pay the agreed consideration of $95 to defendant, and plaintiff shall pay the costs. The prothonotary shall give prompt notice hereof to the parties. Exceptions may be filed within 20 days thereafter. If no exceptions are filed, this decree nisi shall be entered by the prothonotary, upon praecipe, as the final decree.

*Opinion sur Exceptions*

FORREST, J., January 20, 1958.—In this case the chancellor concluded that by reason of a written agreement as modified by a supplemental written agreement between the parties, plaintiff has an easement for the construction and maintenance of an additional pipeline alongside an existing pipeline on the premises of defendant. Defendant has filed exceptions nos. 5, 6, 14, 15 and 16 pertaining to the chancellor's failure to make certain findings of fact and other exceptions relating to conclusions of law, or failure to make conclusions of law and to the decree nisi. As we view this case, if the chancellor had anticipated the above numbered exceptions and had made findings of fact in accordance with defendant's contentions, the conclusions of law and decree nisi would, nevertheless, have been the same. However, in order to obviate any further plea that the findings of fact were insufficiently comprehensive, we shall sustain the above numbered exceptions and make supplemental findings of fact.

All of the exceptions, other than those whose numbers are stated above, relate to matters of law and come within one of the following headings:

(1) That plaintiff's right to lay an additional line was limited to the laying of a line alongside the first line as originally laid;

(2) That plaintiff would be obligated to pay defendant $300 for the laying of an additional line, if such additional line were so laid;

(3) That the sum of $95 was an unconscionably low payment for the right of way for the additional

line and that equity will not enforce unconscionable contracts;

(4) That plaintiff was bound by the agreement of March 27, 1953, to install its pipeline or lines at a distance not to exceed 10 feet from the southerly border of the turnpike extension, and that the installation of the second line 15 to 18 feet south of the turnpike boundary constitutes a continuing trespass; and

(5) That the contracts were prepared by plaintiff and therefore must be strictly construed against plaintiff and in the event of ambiguity all inferences must be resolved against plaintiff.

The answer to defendant's first contention as numbered above is found in the final paragraph of the chancellor's discussion which need not be repeated here.

Defendant's second contention is that plaintiff is obligated to pay $300 for the laying of an additional line at whatever location has been agreed upon. It is admitted that defendant received, and executed a receipt for, $300 "to cover the full amount of the agreed consideration" for the execution of the agreement dated March 27, 1953. However, such sum was the consideration for such relocation agreement itself and was neither expressly nor impliedly substituted for the $95 fixed by the original agreement to be paid for the second line.

Thirdly, defendant contends that $95 is an unconscionably low amount to be paid for an easement of an additional pipeline 1,900 feet in length. It might just as readily be argued that William Penn purchased lands from the Indians at an unconscionably low price. "Inadequacy of consideration is not ground for refusing to decree specific performance of a contract to convey real estate, unless there is evidence of fraud or unfairness in the transaction sufficient to make it inequitable to compel performance: (citing cases).

'Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for judicial rescission of contract' ": Welsh v. Ford, 282 Pa. 99 (1925).

Defendant's fourth contention is that plaintiff committed a trespass by laying the second pipeline farther than 10 feet inside of her boundary line. The rule of reason must govern here. The distance of 10 feet prescribed in the second agreement applies to the first pipe laid, and was manifestly designed so that plaintiff could conveniently use its men and machinery to dig a trench, lay a pipe and fill in the ground and subsequently maintain the line without trespassing on the property of the adjoining owner. A reasonable construction of the agreements considered together, leads to the conclusion that the laying of the second line parallel to the first line and within five to eight feet farther into the property of defendant was contemplated by the parties.

The intent of the parties as expressed in the combined agreements is reasonably clear, so that there is no necessity to resort to the rules of construction which govern in the case of ambiguities.

And now, January 20, 1958, defendant's exceptions nos. 5, 6, 14, 15 and 16 are sustained, and there are made the following

### Supplemental Findings of Fact

9. The consideration for the agreement of March 27, 1953, referred to in finding of fact no. 5 was $300, as shown by receipt, copy of which is attached to the amended reply and marked exhibit "G".

10. By reason of a preliminary injunction entered in this case, the second pipeline was already constructed at the time of the final hearing.

11. The line or portion of line constructed by virtue of the agreement of March 27, 1953, was laid at a

218

distance of 10 feet from the southerly boundary of the turnpike extension.

12. The second pipeline constructed by reason of the preliminary injunction was laid at a distance of approximately 15 to 18 feet from the southerly boundary of the turnpike extension.

The other exceptions are dismissed and the decree nisi is affirmed as the final decree of the court. The prothonotary shall give prompt notice to the parties of the entry of this decree.