**Thomas SEMPLE, Plaintiff,**
**Don P. Brown, Intervening Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, Defendant.**

**Civ. A. No. 29177.**

United States District Court
E. D. Pennsylvania.

March 18, 1963.

Stephen J. McEwen, Upper Darby, Pa., for plaintiff.

Jack Brian, Berman, Richard & Brian, Upper Darby, Pa., for intervening plaintiff.

John F. Cramp, George J. McConchie, Cramp & D'Iorio, Media, Pa., for defendant.

GRIM, District Judge.

This case, tried to the court without a jury, is a diversity action upon a policy of automobile liability insurance issued by defendant to Warren Witmer on his automobile. While the car was being operated by plaintiff, Thomas Semple, it struck and injured Don P. Brown, the intervening plaintiff. Brown got a $22,260 verdict against Semple in the Court of Common Pleas of Delaware County, Pennsylvania. The present action is for the amount of the verdict. Defendant refused to defend Semple in the Pennsylvania action and contends that its policy did not cover Semple at the time of the accident.[1]

■ Witmer, who owned the car, agreed after some negotiations to sell it to Semple. Some days later, late at night, when the car was standing parked at Semple's place of employment, Semple paid Witmer the balance of the purchase price. At that time Witmer turned over to Semple the keys to the car and the Pennsylvania certificate of title, bearing Witmer's signature at the appropriate place. They agreed to appear some hours later (in the daytime) before a notary public for Semple to swear to the assignment of the certificate of title.[2] Witmer then departed, leaving the car at Semple's place of employment. Before the next day dawned, Semple drove the

car and injured Brown. Since all these facts occurred in Pennsylvania and since the policy was delivered there, Pennsylvania law applies. Diversity arises from defendant's Illinois citizenship.

The automobile liability policy issued by defendant in this case contained the following provisions:

[Definitions]. "Named Insured— means the individual so designated in the declarations * * *." (Warren Witmer)

"Insured—* * * the unqualified word 'insured' includes (1) the named insured, and also includes * * * (3) any other person while using the automobile, provided the actual use of the automobile is with the permission of the named insured. * * *"

[Policy Conditions] "6. Assignment. No interest in this policy is assignable unless the company's consent is endorsed hereon." There is no endorsement of consent.

■■ It is clear that since Witmer did not take the affidavit to the assignment of the title certificate prior to the happening of the accident, there was a failure, in this particular at least, to comply with the formalities required by the Pennsylvania Vehicle Code for transfer of the certificate of title. With respect to the significance of the certificate of title under that statute, the Pennsylvania Supreme Court said in Majors v. Majors, 349 Pa. 334, 338, 37 A.2d 528, 529 (1944):

" * * * [T]he primary purpose of the act was not designed to establish the ownership or proprietorship of an automobile, but rather to register the name and address of the

1. Defendant brought a declaratory judgment action in a Pennsylvania court against Semple and Brown to determine whether it was liable to them. On appeal from a finding that defendant was not liable, the Supreme Court of Pennsylvania vacated the judgment on the ground that declaratory judgment was an inappropriate remedy, State Farm Mutual

Automobile Ins. Co. v. Semple, 407 Pa. 572, 180 A.2d 925 (1962). I reach the same result in the present case as that reached in the Pennsylvania court of first instance, 49 Del.Co.R. 400 (1962).

2. Required by section 207 of the Pennsylvania Vehicle Code, Act of April 29, 1959, P.L. 58; 75 P.S. § 207.

person having the right of possession, and to furnish persons dealing with one in possession of an automobile a means of determining whether such possession was prima facie lawful. Braham & Company v. Steinard-Hannon Motor Co., 97 Pa. Super. 19, 23."

The Braham case, in speaking of an earlier similar statute, said:

"It is clear that the primary purpose of the Act * * * was to protect the public against the theft of automobiles and their resale by the thief, and to facilitate the recovery of stolen automobiles. It was a police measure. * * *"

It appears from these holdings that in Pennsylvania a certificate of title does not constitute more than some evidence of ownership. Witmer's failure to take the affidavit to the assignment of the certificate did not operate to prevent actual transfer of ownership of the car. The car was a chattel, and the buyer and seller took all the steps necessary under § 2–401(2) of the Uniform Commercial Code, 12A P.S. § 2–401(2), to transfer ownership of the car to the buyer, Semple. This section provides:

"(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods * * *." [3]

In this case the car ("the goods") was left at Semple's place of employment at a time when Semple was at that place, and at that time Witmer turned the keys over to him. This constituted physical delivery of the goods, and under § 2–401(2) title then passed to Semple. Even though the delivery of the keys might be considered a symbolic delivery, as in livery of seisen, they placed in Semple the power to operate the car.

■ At the time of the accident, therefore, the car was Semple's and not Witmer's. When Witmer transferred ownership to the car he also gave permission to Semple to drive it, but by parting with ownership Witmer divested himself of the power to determine who had permission to drive it. His power to give such permission was then no more than the power of any stranger to give permission. For this reason the "permission" provision of the policy could not come into operation to constitute Semple an "insured" under the policy.[4]

■ Nor is Semple otherwise covered by the policy, for three reasons. First, transfer of ownership of the property insured does not in and of itself transfer the insurance on the property to the transferee, Olyphant Lumber Co. v. Peoples' Mutual Live Stock Insurance Co., 4 Pa.Super. 100 (1897). Second, the insurance company did not give its consent to transfer of the policy, as required by Paragraph 6 of the Policy Conditions, Witkofski v. Daniels,[5] 329 Pa. 452, 459, 198 A. 19 (1938). Third, Witmer did not assign the policy to Semple or made any attempt to.

---

3. The "documents of title" referred to in the Uniform Commercial Code do not include certificates of title to motor vehicles. See § 1–201(15), 12A P.S. § 1–201 (15).

4. It is doubtful that Witmer, having transferred title to the car and being in no wise responsible for its operation, had an insurable interest in the car. Commonwealth Casualty Co. v. Arrigo, 160 Md. 595, 154 A. 136, 77 A.L.R. 1250 (1931); Employers Liability Assurance Corp., Ltd. v. Sweatt, 95 N.H. 31, 57 A.2d 157 (1948).

5. In the Witkofski case, relied on by defendant, the policy provision differed considerably from the one in the case at bar. The policy provision in the Witkofski case was:

"Any assignment of interest or other change hereunder (except by death of Insured) whether voluntary or involuntary *shall render this policy void* unless consented to by endorsement hereon." 329 Pa. at p. 454, 198 A. at p. 20 (emphasis supplied).

Defendant is not liable on this policy to Semple or to Brown, the person injured. In the light of this determination, it is not necessary to consider whether, while the verdict against him remains unpaid, plaintiff is entitled to bring a direct action against the insurance company.

The facts and law stated in this opinion constitute the court's findings of fact and conclusions of law.

## ORDER

AND NOW, March 18, 1963, judgment is entered in favor of the defendant and against the plaintiff and the intervening plaintiff. The motion of plaintiff to open the record for the taking of additional testimony is denied.