In re Ronald AMBROSE, Debtor.

**FIRST NATIONAL BANK
OF PENNSYLVANIA,
Movant,**

v.

**Alan E. CECH, Trustee and Ronald
Ambrose, Respondents.**

In re Oliver K. NDIMBIE, Debtor,

**FIRST NATIONAL BANK
OF PENNSYLVANIA,
Movant,**

v.

**Alan E. CECH, Trustee and Oliver
K. Ndimbie, Respondents.**

In re Willy M. BALABA, Debtor.

**FIRST NATIONAL BANK
OF PENNSYLVANIA,
Movant,**

v.

**Alan E. CECH, Trustee and Willy
M. Balaba, Respondents.**

**Bankruptcy Nos. 92–23464
to 92–23466–JKF.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 9, 1992.

245

Wanda M. Schiller, Pittsburgh, PA, for First Natl. Bank of Pennsylvania.

Alan E. Cech, Trustee, for the Trustee.

Lee David Moses, Pittsburgh, PA, for debtors.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matters before the court are three motions for relief from stay filed on behalf of First National Bank of Pennsylvania (hereafter "First National").[1] For the reasons which follow the motions will be granted.

In June of 1991 Ronald Ambrose, Oliver K. Ndimbie and Willy M. Balaba (hereafter "Debtors") and George Tita (hereafter "Tita") borrowed $224,000 from First National. The loan was evidenced by a promissory note dated June 3, 1991. Debtors and Tita executed a security agreement dated May 31, 1991, in favor of First National which granted First National a security interest in ten 1982 GMC cement trucks. The proceeds of the loan were used to purchase the trucks from KAG Leasing for which First National previously had financed the trucks. Debtors and Tita are in default on the loans. The certificate of title for each truck lists First National as the lienholder. KAG Leasing transferred ownership in the trucks to Debtors and Tita by executing the assignment and warranty of title on the back of each certificate of title and giving the certificates to Tita to submit to the Pennsylvania Department of Transportation in application for a new title, according to the procedure established by Pennsylvania law.

---

1. First National failed to serve Debtors with the original motion and notice of hearing, although their attorney was served. Counsel is reminded that the Federal Rules of Bankruptcy Procedure require that debtors themselves be served. *See* Fed.R.Bankr.P. 7004(b)(9) as applied to contested matters by Fed.R.Bankr.P. 9014, 11 U.S.C.

75 Pa.Cons.Stat.Ann. § 1111. Tita was entrusted with the responsibility of submitting the certificates of title to the Pennsylvania Department of Transportation in order to obtain new certificates but failed to do so. *See* Motion for Relief from Stay at ¶ 6; Trustee's Brief in Opposition to Motion for Relief from Stay, Deposition of Rex E. Knisley at 26.[2]

The trustee, Alan E. Cech, and Debtors assert that First National's lien related only to the original loan from First National to KAG Leasing, and that, because KAG Leasing's obligation has been satisfied, First National's lien expired and so First National is, at best, an unsecured creditor. The parties agree, and the court so finds, that Debtors and Tita are the owners of the vehicles. Under Pennsylvania law, the name of the "owner" on the certificate of title is only "some evidence of ownership". *Semple v. State Farm Mutual Automobile Ins. Co.*, 215 F.Supp. 645, 647 (E.D.Pa.1963). *See also Aetna Casualty and Surety Co. v. Duncan*, 972 F.2d 523, 528 at n. 1 (3d Cir.1992). In the case at hand, although the name of the registered owner has not been changed on the records of the Department of Transportation, possession of the trucks was transferred to Debtors and Tita and there has been adequate consideration for the transfer. The evidence established that Debtors and Tita granted First National a security interest in the vehicles.

The only question remaining is whether First National's lien survived the transfer of ownership. We find that it has.

The Motor Vehicle Code provides that a security interest "recorded on a certificate of title is effective for a period of … six years … from the time of perfection" with respect to all vehicles except mobile homes or emergency vehicles. 75 Pa.Cons.Stat. Ann. § 1138(a). No new or amended certificate of title showing Debtors and Tita as owners in lieu of KAG Leasing was ever issued because Tita never submitted to the Department of Transportation the documents necessary to effectuate the transfer. Thus, anyone searching the record for ownership by Debtors and Tita would not find evidence of same. Upon presentation of the certificates of title in the name of KAG Leasing, a prospective lender or buyer would be on notice to question Tita's and Debtors' ability to convey titles to the vehicles which were not of record in their names.

There is no dispute that First National was properly perfected in the vehicles with respect to the initial transaction with KAG Leasing.[3] The trustee cites the deposition testimony of Rex Knisley at pages 15 to 16 to support the proposition that First National intended to release its liens on the trucks when ownership was transferred from KAG Leasing to Debtors and Tita. A reading of the entire transcript, however, establishes that "there was no intention to carry on the lien against KAG [Leasing]". Trustee's Brief in Opposition to Motion for Relief from Stay, Deposition of Rex E. Knisley at 19. The transcript, taken as a whole, does not establish that First National intended to release its collateral, only that it intended to release KAG Leasing.

**2.** Rex Knisley's deposition was taken in connection with a 1991 action in the Court of Common Pleas of Allegheny County filed on behalf of KAG Leasing against First National and Superior Concrete, the company formed by Debtors and Tita. The certificates of title have not been produced in connection with the instant matter and, therefore, we find that the certificates of title have never been submitted to the Department of Transportation to reflect the change of ownership from KAG Leasing to Debtors and Tita.

**3.** The Uniform Commercial Code provides that perfection of a security interest in a motor vehicle is governed by the Motor Vehicle Code, 75 Pa.Cons.Stat.Ann. § 101 et seq.; 13 Pa.Cons.

Stat.Ann. § 9302(c)(2). The Motor Vehicle Code provides that perfection is attained when the certificate of title is received or date stamped by the Department of Transportation and accompanied by required information regarding the security interest. 75 Pa.Cons.Stat. Ann. § 1132(b). We also note that there is no conflict between § 1132(b) of the Motor Vehicle Code requiring the lienholder to submit the certificate of title to the Department of Transportation and the requirement of § 1111(b) that the new owner do so inasmuch as the first cited section refers to the initial creation of the lien and the section last referred to concerns only transfer of the ownership interest.

The loan to Debtors and Tita operated to pay down the original debt owed by KAG Leasing to First National except for a $40,000 balance, as to which First National accepted a pledge and hypothecation agreement of a note payable by Debtors and Tita to KAG Leasing. Trustee's Brief in Opposition to Motion for Relief from Stay, Deposition of Rex E. Knisley at 15–16. We find that, in order to secure repayment of the $224,000 owed by Debtors and Tita, First National retained its lien *against the vehicles.*

The trustee argues that *Matter of Tressler,* 771 F.2d 791 (3d Cir.1985), controls and, therefore, a security interest is perfected only when the Department of Transportation "issues a certificate of title bearing the name of the lienholder". 771 F.2d at 793. Subsequent to the decision in *Tressler,* however, the Motor Vehicle Code was amended, effective August of 1990, nine months before the transaction at issue. Pursuant to 75 Pa.Cons.Stat.Ann. § 1132(b), as amended in 1990, "[a] security interest is perfected at the time an application for a certificate of title is received or date stamped by the department". There is no dispute that First National initially perfected its lien against the vehicles in connection with the transaction between it and KAG Leasing.

In light of the statutory provisions concerning the duration of such security interests, the mere transfer of ownership of the vehicles does not affect the lienholder's status. The Motor Vehicle Code governs the perfection of a security interest in motor vehicles as well as the "[d]uration and renewal of perfection ... in other respects the security interest is subject to" the Uniform Commercial Code. 13 Pa.Cons.Stat. Ann. § 9302(d). First National cites an apparent conflict between § 9402(g) and § 9306(b) of the Uniform Commercial Code concerning the continuation of the effectiveness of a security interest. We find that those sections are inapplicable to the instant situation. The Motor Vehicle Code primarily governs the status of First National's lien and it provides that the lien continues for six years. *See* 75 Pa.Cons. Stat.Ann. § 1138(a). The lien remains of record until the lienholder acts to remove it. The Motor Vehicle Code requires the lienholder to satisfy the lien of record or apply for a corrected title to be issued in the owner's name upon satisfaction of the underlying obligation. 75 Pa.Cons.Stat. Ann. § 1135(a). Failure to deliver a satisfied certificate of title is a summary offense. *Id.* at § 1135(c). There was no evidence introduced which could be construed to prove that First National agreed to release or satisfy its lien. The only evidence was that one of the new owners, Tita, took possession of the certificates of title to change the *ownership* of the vehicle on the public record. The trustee has not produced new certificates of title showing the absence of liens against the trucks. The change of ownership occurred in mid–1991 with the loan from First National to Debtors and Tita. These bankruptcies were filed more than a year later, in August of 1992. There is no evidence that First National released its lien or that it had any intention of doing so with respect to the trucks when it lent money to Debtors and Tita.

For the foregoing reasons we find that First National's lien remains perfected and in full force and effect. An appropriate order will be entered.

## ORDER.

AND NOW, to-wit, this 9th day of December, 1992, it is ORDERED that, for the reasons expressed in the foregoing Memorandum Opinion, the Motion for Relief from Stay filed on behalf of First National Bank of Pennsylvania is GRANTED.