772 F.2d 47
 OCCIDENTAL FIRE AND CASUALTY COMPANY OF NORTH CAROLINA,
Appellant in No. 84- 3766,
v.
Joseph L. BROCIOUS and Joseph R. Gonzalez, as Administrator
of the Estate of Christopher S. Gonzalez.
Appeal of BUCKEYE UNION INSURANCE COMPANY, Intervenor,
Appellant in No. 84- 3765.
 Nos. 84-3765, 84-3766.
 United States Court of Appeals,
Third Circuit.
 Argued July 18, 1985.
Decided Sept. 12, 1985.
 
 Wallace J. Knox (argued), Richard E. Bordonaro, Knox, Graham, McLaughin, Gornall & Sennett, Inc., Erie, Pa., for appellant/cross-appellee Occidental Fire and Cas. Co. of North Carolina.
 Robert C. Ward (argued), Dunn & Conner, Erie, Pa., for appellee/cross-appellant Buckeye Union Ins. Co.
 Michael L. Carr, Erie, Pa., for appellee Joseph L. Brocious.
 William J. Kelly, Craig A. Markam, Elderkin, Martin, Kelly, Messina & Zamboldi, Erie, Pa., for appellee Joseph R. Gonzalez, as Adm'r of Estate of Christopher S. Gonzalez.
 Before SEITZ, HIGGINBOTHAM and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 APPEAL OF OCCIDENTAL
 A.
 
 1
 Occidental Fire and Casualty Company of North Carolina (Occidental) brought this declaratory judgment action in federal court on the basis of diversity jurisdiction to determine its duty to defend and indemnify Joseph L. Brocious for an accident that occurred on August 15, 1983 when the tractor-trailer that Brocious was operating struck and killed Christopher S. Gonzalez, a 15-year old, while he was riding his bicycle.[1]
 
 
 2
 The tractor-trailer was the subject of a conditional sales agreement between Brocious, the buyer, and William B. Tobias, the seller, dated August 25, 1982.[2] This agreement provided that Tobias "agrees to sell and convey to [Brocious] who ... agrees to purchase" the tractor-trailer subject to certain conditions. One of the specified conditions was that Tobias would retain the title until the full purchase price of $14,000, payable in monthly installments of $500 each, had been paid. Another was that Brocious was responsible for all maintenance and insurance for the tractor-trailer. The agreement did not expressly provide which party would retain possession during the pay out, but no one disputes that, in fact, Brocious had possession of the vehicle during that period.
 
 
 3
 Pursuant to his obligations under the agreement and under the Pennsylvania No-Fault Motor Vehicle Insurance Act mandating omnibus liability insurance coverage, 40 Pa.Cons.Stat.Ann. Sec. 1009.104(a) (Purdon Supp.1975) (repealed 1984), Brocious contacted an insurance broker. Brocious provided the broker with complete and accurate information as to the conditional sales agreement. After a series of intermediate steps through another broker and then to Occidental's agent and home office, Occidental issued a policy covering the tractor-trailer which listed Tobias, the title owner, as the named insured, and named Brocious in the section identifying all possible drivers.
 
 
 4
 Following discovery, Occidental moved for summary judgment on the ground, inter alia, that Brocious was not a "person insured" under the omnibus clause of the policy.[3] That clause covers any other person using an "owned automobile ... with the permission of the named insured." An "owned automobile" was defined as "an automobile which is owned by the named insured...." Occidental maintained in the district court, as it does here, that as a result of the sales agreement, Brocious, not Tobias, "owned" the tractor-trailer and therefore Brocious was not driving a vehicle "owned" by the named insured with the named insured's permission.
 
 
 5
 The district court denied Occidental's motion, holding that Brocious was insured under the policy and that Occidental was obligated to indemnify and defend Brocious on the claim made against him by Gonzalez' estate. After the court subsequently determined the respective obligations of Occidental and another insurer who intervened, to be discussed infra, both insurers appealed.
 
 B.
 
 6
 In arguing that Brocious was not an insured under the terms of its policy, Occidental maintains that Brocious, not Tobias, was the owner of the tractor-trailer. It is undisputed, however, that the certificate of title and registration of the vehicle with the appropriate Pennsylvania authorities were in the name of Tobias. Albeit not conclusive, this is some indicia of ownership, see Semple v. State Farm Mutual Automobile Insurance Co., 215 F.Supp. 645, 647 (E.D.Pa.1963).
 
 
 7
 The Pennsylvania Vehicle Code defines "owner" as:
 
 
 8
 A person, other than a lienholder, having the property right in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security.
 
 
 9
 75 Pa.Cons.Stat.Ann. Sec. 102 (Purdon 1977). Significantly, the statute had included conditional vendees in its earlier versions, but was amended in 1976, inter alia, to delete the reference to conditional vendee.[4] Although we can find no legislative history regarding this change, we cannot assume that the state legislature deleted the reference to conditional vendees without any purpose.
 
 
 10
 Occidental argues, however, that Tobias should be regarded as a "lienholder", defined in the statute as a "person holding a security interest in a vehicle." 75 Pa.Cons.Stat.Ann. Sec. 102 (Purdon 1977). A security interest is an "interest in a vehicle reserved or created by agreement which secures payment...." Id. Sec. 102. However, Tobias did not follow the procedure provided by the Vehicle Code to create a security interest in vehicles.[5] It is clear from both Brocious' and Tobias' depositions that the parties understood that Tobias was not retaining title as a security interest but instead that he would remain the owner until the final payment was made. App. at 35, 363.
 
 
 11
 The parties' intent is the most important factor in the determination of ownership of a vehicle that is the subject of a conditional sales agreement. Hahn v. Andrews, 370 Pa. 65, 67, 87 A.2d 284, 285 (1952). Thus, this case is similar to Benton v. State Farm Mutual Automobile Insurance Co., 306 F.2d 179, 180-81 (6th Cir.1962), in which the court held that the title owner, who had agreed to sell and give the buyer possession but retained title pending receipt of a substantial amount of the purchase price, still owned the vehicle for insurance purposes.
 
 
 12
 Occidental relies on Witkofski v. Daniels, 329 Pa. 452, 198 A. 19 (1938), as support for its position that Brocious was the owner. We find the situation in this case distinguishable. In Witkofski, plaintiff, who was injured while a passenger in an automobile driven by Henry Daniels, sought to recover on an insurance policy issued to the title owner, Charles Daniels, Henry's brother. That policy, originally covering a 1931 car, was later changed by endorsement to cover a 1934 car. Unknown to the insurance company, the 1934 car, which was involved in the accident, was "rented" to Henry who used Charles' 1931 car as a downpayment and undertook to pay the additional amount due in monthly installments. The Court held that the insurance policy was invalidated because the named insured, Charles, failed to follow the requirement of the policy to notify the insurance company both that he owned the new car, which was encumbered, in a different manner than he had owned the old car, which was fully paid, and of an assignment of interest or change in the legal status.
 
 
 13
 At the time of the Witkofski case, the Pennsylvania Motor Vehicle Code, 1929 Pa.Laws 909 (current version at 75 Pa.Cons.Stat.Ann. Sec. 102 (Purdon 1977)) included a conditional vendee like Henry in the definition of "owner". As noted above, the current Vehicle Code no longer includes conditional vendees in its definition of owner. Moreover, in the case before us, there was no misrepresentation, change of circumstances, or failure to disclose a relationship that arose after acquisition of the policy. Although Occidental maintains that had it known of the conditional sales agreement, it would have evaluated Brocious, not Tobias, it is undisputed that Brocious fully informed the independent broker/agent with whom he dealt. Since Occidental has chosen to issue policies initiated in this way, it cannot complain if the information provided by Brocious was not passed on to it.
 
 
 14
 It is difficult to imagine what additional steps Brocious could have taken to acquire a valid policy. Occidental has not suggested that it would not have issued a policy naming Brocious as owner. Since it was concededly on notice that Brocious would be a driver of the car, its risk was not increased by construing Brocious as an insured under the policy. In view of the fact that Occidental received premiums from Brocious for the policy, which was renewed after the first year for an additional year, we believe it is unlikely that Pennsylvania, which reads any uncertainties created by policy language against the insurer, see, e.g., Motley v. State Farm Mutual Insurance Company, 502 Pa. 335, 340, 466 A.2d 609, 611 (1983), would hold that there was no policy covering Brocious during this period. We conclude that the district court correctly found that Brocious was insured under the Occidental policy.
 
 II.
 RELATIONSHIP OF RESPECTIVE INSURANCE POLICIES
 A.
 
 15
 As an alternative basis for its motion for summary judgment, Occidental argued that Brocious was not covered under its policy because of the "truckmen's endorsement"[6] or that, in any event, the endorsement rendered its coverage excess to that of an existing policy issued by the insurer for a lessee of the vehicle. The truckmen's endorsement applies only when the insured motor vehicle is leased to be used "in the business of transporting property." Occidental views the main function of this clause as shifting "the primary responsibility of the lessor's insurer for providing coverage during the time of the lease agreement to the insurer of the lessee." Brief for Appellant/Cross-Appellee at 26.
 
 
 16
 Sometime before the accident at issue, Brocious leased the tractor-trailer to the Doan Mining Company, which employed Brocious as its driver. On the day of the accident, Brocious was hauling coal for Doan. Doan's insurer, Buckeye Union Insurance Company (Buckeye), intervened in the federal action. Buckeye contended that the Occidental policy, which had coverage for $500,000, provided primary coverage and that its policies provided excess coverage only.
 
 
 17
 Buckeye had issued two policies to Doan. One, which had a limit of $1,000,000, stated that it provided only excess coverage when the covered vehicle was not owned by Doan.[7] The other policy had a limit of $20,000,000 and stated that if a loss was covered by other valid and collectible insurance, the policy would be in excess of and would not contribute with such other insurance.[8] Buckeye moved for summary judgment claiming that its policies provided only excess coverage to the primary coverage of Occidental.
 
 B.
 
 18
 The district court correctly relied on our opinion in Transport Indemnity Co. v. Home Indemnity Co., 535 F.2d 232 (3d Cir.1976), in holding that Occidental's truckmen's endorsement did not exclude Brocious from the policy's coverage, but merely rendered the policy excess. In Transport Indemnity, also involving the lease of a truck, the lessor's insurance policy contained a truckmen's endorsement which the lessor's insurer contended relieved it from its obligation to defend and pay. Aptly calling the endorsement "a peculiarly incomprehensible document," 535 F.2d at 237, this court rejected the insurer's argument that the endorsement should be interpreted to mean that there was no coverage unless the automobile was being used exclusively in the business of the named insured. We found that such a reading would directly contradict another clause which stated that the policy provided for excess coverage. In the face of such a conflict, we stated that the clause extending coverage should be preferred over the clause absolutely denying it. 535 F.2d at 238.
 
 
 19
 Applying that reasoning here, clause (d) of the truckmen's endorsement, stating that it provided excess coverage when the insured vehicle is a commercial type leased for the purpose of transporting property, would be preferred over clause (b), which purports to exclude coverage entirely. Since Occidental concedes that the truckmen's insurance endorsement in its policy is indistinguishable from that in the policy construed in Transport Indemnity, our decision is controlled by the holding there that the truckmen's endorsement does not relieve the insurer but limits the insurer's liability to excess coverage. See Internal Operating Procedures of the United States Court of Appeals for the Third Circuit Chapter 8.C.
 
 
 20
 Occidental also argues that federal and state regulations require Doan's insurer to assume complete responsibility for the accident because Doan had exclusive possession, use and control of the vehicle and obtained the sole benefit from its use. In Carolina Casualty Insurance Co. v. Insurance Co. of North America, 595 F.2d 128, 138 (3d Cir.1979), we stated that "[w]hile a lessee cannot free itself of its federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors or their insurers of otherwise existing obligations ... under contracts allocating financial risk among private parties." We held that where the issue was the responsibility between insurance carriers, a court was free to examine the terms of the insurance contracts to allocate financial responsibility. Id. at 138-39. See also Carolina Casualty Insurance Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co., 327 F.2d 324, 326 (3d Cir.1964) (Pennsylvania Public Utility law does not control in action between two insurance carriers).
 
 
 21
 Thus, we agree with the district court's construction of the truckmen's endorsement as extending Occidental's coverage on an excess basis. The court concluded that since Buckeye had a like obligation to provide Brocious with excess coverage under the terms of the Doan policy, there were competing excess clauses. In that situation, "neither is given effect and the two insurers must stand on equal ground." App. at 543. The insurers do not disagree with this legal principle, but disagree on the proration between them.
 
 III.
 PRORATION
 
 22
 The district court did not expressly specify whether both of Buckeye's policies, one with a limit of $1,000,000 and the other, the umbrella policy, with a limit of $20,000,000, were to be added together for the proration with the Occidental policy. Occidental argues that the two Buckeye policies should be cumulated so that the proration is 42:1 ($21,000,000 to $500,000).
 
 
 23
 The language of the Occidental policy and Buckeye's $1,000,000 policy regarding allocation of liability when two or more policies cover a particular loss clearly provides for proration of liability in proportion to the limits of liability of each policy.[9] See also Vrabel v. Scholler, 372 Pa. 578, 580-81, 94 A.2d 748, 749 (1953). In Transport Indemnity, we held that when one policy provided primary coverage and two policies provided excess coverage, the excess liability "must be prorated between the two carriers of excess insurance according to the limits in the policies." 535 F.2d at 239. See also 8A J. Appleman, Insurance Law and Practice Sec. 4906 at 345, 348 (1981). If Buckeye's umbrella policy is disregarded, proration of the Occidental policy of $500,000 coverage with Buckeye's policy of $1,000,000 coverage would mean that Occidental would pay one dollar for every two dollars paid by Buckeye until the limits of liability were reached.
 
 
 24
 In determining whether Buckeye's $20,000,000 umbrella policy should be used in the proration, we note that umbrella policies are sold at comparatively modest prices to pick up where primary coverages end in order to provide extended protection. 8A J. Appleman, supra, Sec. 4909.85 at 452. Because such policies are not an attempt by a primary insurer to limit a portion of its risk by labelling it "excess" nor a device to escape responsibility, they are regarded as a "true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." Id. at 453-54 (footnotes omitted).
 
 
 25
 The $20,000,000 Buckeye policy, clearly titled an umbrella policy, contains different language in its "other insurance" provision than does either the Occidental or the $1,000,000 policy. The policy states that it "shall be excess of and shall not contribute with" other insurance.
 
 
 26
 A number of cases have given effect to the different language of the umbrella policy and its underlying purpose by holding that primary policies or policies with excess clauses must be exhausted before the carrier of an umbrella policy is required to pay. They have recognized the residual nature of an umbrella policy. See, e.g., Allstate Insurance Co. v. Employers Liability Assurance Corp., 445 F.2d 1278, 1283-84 (5th Cir.1971) (describing the umbrella policy's coverage as "unique"); Aetna Casualty and Surety Co. v. Beane, 385 So.2d 1087, 1090 (Fla.Dist.Ct.App.1980); Blanchard v. Rodrigue, 340 So.2d 1001, 1008-09 (La.Ct.App.1976). We predict Pennsylvania would adopt the same reasoning.
 
 
 27
 Occidental argues that an endorsement[10] providing that the umbrella policy will be construed on the same terms and conditions as the underlying insurance requires that the umbrella policy be included with the other two policies for proration purposes. We reject that construction which would, in effect, negate the umbrella character of the $20,000,000 policy. Buckeye's umbrella policy provides that its liability shall be only for the ultimate net loss in excess of:
 
 
 28
 (a) the underlying limits of liability of the underlying insurance policies as stated and described in the declarations and those of any underlying insurance collectible by the insured as to each occurrence insured by said underlying policies of insurance....
 
 
 29
 App. at 157. Since we have held that the Occidental policy is to be treated the same as the $1,000,000 Buckeye policy, which is listed as underlying insurance, we hold that both policies must first be exhausted, on a pro rata basis, before the umbrella policy may be applied to any excess.
 
 
 30
 It will not be necessary to remand this case to the district court for modification of the order, because nothing in the court's order is inconsistent with our holding as to the method of proration.[11] We assume the parties will follow that order as clarified herein.[12]
 
 
 31
 Finally, we note with dismay that the insurers have not arranged to permit Gonzalez' administrator's state court action to proceed while this matter was pending in federal court. We see no reason why that action should not have proceeded expeditiously.
 
 IV.
 
 32
 For the reasons set forth above, the orders of the district court will be affirmed. Costs to be assessed against Occidental.
 
 
 
 [1]
 Suit was brought against Brocious and Joseph R. Gonzalez as administrator of the Estate of Christopher S. Gonzalez. Buckeye Union Insurance Company was permitted to intervene. See text at 52 infra
 
 
 [2]
 The agreement provided in relevant part:
 A. Title to said truck and trailer shall remain in the Seller [Tobias] until the sum of fourteen thousand dollars at the rate of $500.00 per month beginning September 30, 1982, and thereafter on the 30th day of each month shall be paid. Buyer [Brocious] shall from this date be responsible for all maintenance and insurance for the said truck and trailer and further, Buyer will be fully liable for all accidents and damages which may occur through Buyer's use of said truck and trailer.
 App. at 33.
 
 
 [3]
 The policy provided that "persons insured" also included,
 any other person while using an owned automobile or a temporary substitute automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:
 (1) a lessee or borrower of the automobile, or
 (2) an employee of the named insured or of such lessee or borrower;
 App. at 16 (emphasis omitted).
 
 
 [4]
 The previous version of the Act, enacted in 1929, contained the following definition of "owner":
 "Owner."--A person or persons holding the legal title of a vehicle; or, in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof, or other like agreement, with the right of purchase upon performance of the conditions stated in the agreement, and with an immediate right of possession vested in the conditional vendee or lessee, then such conditional vendee or lessee shall be deemed the owner for the purpose of this act.
 1929 Pa.Laws 909 (emphasis added).
 
 
 [5]
 This entails executing an application and delivering it, together with the certificate of title, to the Department of Transportation, 75 Pa.Cons.Stat.Ann. Sec. 1133(a) (Purdon 1977)
 
 
 [6]
 The endorsement provided:
 It is agreed that the insurance applies with respect to the automobile described herein or designated in the policy as subject to this endorsement, subject to the following additional provisions:
 * * *
 (b) Except with respect to the named insured or an employee thereof, but subject otherwise to the "Persons Insured" provision, the insurance does not cover as an insured any person or organization, or any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others under any of the following conditions:
 (1) if the bodily injury or property damage occurs while such automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, but this limitation shall not apply to an automobile while en route, at the request of the named insured, to engage in such exclusive use and not transporting property for others; or
 * * *
 (3) if such person or organization so engaged is insured under an automobile liability insurance policy which affords coverage for automobiles hired by such person or organization but which does not insure on a direct primary basis the owners of such automobiles and the agents and employees of such owners while such automobiles are being used exclusively in the business of such person or organization and over a route such person or organization is authorized to serve by federal or public authority:
 * * *
 (d) With respect to (1) any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, or (2) any hired private passenger automobile, or (3) any non-owned automobile, the insurance under this endorsement shall be excess insurance over any other valid and collectible insurance, whether primary, excess or contingent, available to the insured. Otherwise, the insurance under this endorsement is primary insurance.
 App. at 28.
 
 
 [7]
 The policy provided:
 B. OTHER INSURANCE.
 
 
 [1]
 For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance
 App. at 196.
 
 
 [8]
 The policy provided:
 
 
 [10]
 Other Insurance. If other valid and collectible insurance with any other insurers applicable to any loss or expense covered by this policy is available to the insured (other than insurance which is in excess of the insurance afforded by this policy), the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms of other insurance. If collectible insurance under any other policy of the company is available to the insured, covering a loss also covered hereunder (other than underlying insurance of which the insurance afforded by this policy is in excess), the company's total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy
 App. at 157-58.
 
 
 [9]
 The Buckeye policy provides:
 
 
 [2]
 When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis
 App. at 196. The Occidental policy provides:
 When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
 * * *
 (b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.
 App. at 20-21.
 
 
 [10]
 The endorsement provides:
 Notwithstanding anything contained herein to the contrary, it is hereby understood and agreed that where underlying insurance is written under terms and conditions providing greater protection or indemnity to the assured than the terms and conditions of this policy, this insurance shall indemnify the assured upon the same terms, conditions and limitations of the applicable underlying insurance, but where no such underlying insurance exists this insurance indemnifies the assured upon the terms, conditions and limitations of the attached umbrella form.
 App. at 142 (emphasis omitted).
 
 
 [11]
 The relevant portion of the court's order of October 31, 1984 states:
 Occidental Fire and Casualty Company of North Carolina and Buckeye Union Insurance Company (Insurers) each are under a legal obligation to provide Joseph L. Brocious with coverage with each insurer's liability to be prorated according to the limits of its policy or policies, with all costs, fees and expenses relative to the defense of Joseph L. Brocious to be shared equally by and between the insurers.
 App. at 545.
 
 
 [12]
 Occidental has conceded that if it is not completely absolved from liability, it is responsible for one-half of the defense costs of Brocious. Brief for Appellant/Cross-Appellee at 33