**AETNA CASUALTY AND SURETY CO.**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION.**

Civ. A. No. 86–5200.

United States District Court,
E.D. Pennsylvania.

Sept. 24, 1987.

---

David J. Truelove, Philadelphia, Pa., for plaintiff.

Robert C. Steiger, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

DITTER, District Judge.

Plaintiff, Aetna Casualty and Surety Company, brought this declaratory judgment action against defendant, United Services Automobile Association ("USAA").

---

Both companies issued insurance policies to persons potentially liable for damages in a personal injury suit pending in the Court of Common Pleas of Montgomery County, Pennsylvania. The parties dispute the order of liability of their respective policies for any damages in that action. They have submitted a stipulation of facts and filed cross-motions for summary judgment. For the reasons that follow, I will grant plaintiff's motion and refuse defendant's.

On April 3, 1985, an automobile owned by H.D. Wilkins and driven by Marguerite Pinney was involved in an accident that injured John Ewell, the state court plaintiff. At the time of the accident, Wilkins was protected by two Aetna insurance policies, a personal auto policy that covered the vehicle involved in the accident and a "Personal Excess Indemnity Policy." The driver, Pinney, was a "covered person" under a USAA auto policy.

The Aetna auto policy provided a maximum of $250,000 in primary coverage for an accident involving an insured automobile, prorated with other applicable insurance.[1] The "other insurance" clause further stated that "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance." The USAA auto policy had a coverage limit of $300,000. As with Aetna's policy, it provided primary coverage for an accident involving an insured auto when there was no other insurance, as well as proration when there was. Where, as here, a covered person was driving a vehicle she did not own, the coverage under the USAA policy was "excess over any other collectible insurance."[2]

Under the Aetna excess policy, Wilkins was insured with an additional $1,000,000 in coverage on the condition that he maintain primary auto coverage in the amount of $250,000.[3] The premiums for this policy were low compared to the coverage limit. The excess policy covered "the *insured* for the part of the *loss* that exceeds the *primary limit.*" "Primary Limit" is defined as "the total of other insurance an *insured* may collect for any occurrence, including amounts for primary insurance policies."[4] An "insured" includes any person using a covered auto with the permission of the named insured. Finally, the Aetna excess policy states, "[t]his insurance is always excess over any other insurance which covers any part of the loss."

The parties agree that Aetna's automobile policy provides primary coverage and therefore must cover the first $250,000 of damages in the state court action.[5] The parties disagree, however, on who is responsible for damages that exceed this amount. Aetna claims that USAA is responsible for the next $300,000 in damages while USAA asserts that any recovery above $250,000 should be prorated between the USAA auto policy and the Aetna excess policy according to their policy limits, $300,000 and $1,000,000 respectively.

Aetna argues that its excess policy is an umbrella policy and that this policy is not responsible for any part of the loss until all other applicable insurance has been paid out. An "umbrella policy" is defined as a policy of insurance "sold at comparatively modest cost to pick up where primary coverages end, in order to provide an extended protection ..." 8A J. Appleman Insurance Law and Practice § 4904.85 at 452 (1987).

1. The Aetna policy reads

   If there is other applicable liability insurance we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

2. The "other insurance" clause in the USAA auto policy provides,

   If there is other applicable insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

3. Wilkins was also required to maintain primary homeowner's or personal liability insurance and recreational vehicle and watercraft liability insurance.

4. A "primary insurance policy" is "a policy that pays for a loss before this policy pays."

5. Use of the term "damages" in this memorandum also includes any payment in settlement of the state court action.

In support of this argument, Aetna relies on *Occidental Fire and Casualty Company v. Brocious*, 772 F.2d 47 (3d Cir.1985). USAA counters that Aetna's excess policy and its policy provide the same coverage to this occurrence; therefore, their liability should be prorated. USAA relies exclusively on an earlier Third Circuit decision, *Transport Indemnity Company v. Home Indemnity Company*, 535 F.2d 232 (3d Cir. 1976).

In *Brocious*, the court held that an umbrella insurance policy was not responsible for coverage until exhaustion of all other insurance, including excess coverage in two automobile policies.[6] The Third Circuit noted that "umbrella policies" are sold at relatively low prices to provide extended coverage. Thus, "they are regarded as 'true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses.'" *Brocious*, 772 F.2d at 53 (quoting 8A J. Appleman Insurance Law and Practice § 4909.85 at 453–54 (1987)).

The court found that the policy was an "umbrella policy" because it was called that, had low premiums for $20,000,000 coverage, and contained language in the "other insurance" clause that was different from the clauses in the two auto policies.[7] In particular, the court focused on the phrase "shall be excess of and *shall not contribute with*" other insurance. *Brocious*, 772 F.2d at 54 (emphasis added). The court also reasoned that any other decision would negate the language of the umbrella policy which provided that coverage was in excess of the limits of the primary insurance and those of any underlying insurance collectible by the insured. In *Brocious*, both auto policies provided excess coverage for the accident. Since no policy provided primary coverage, a decision to prorate all the excess policies would result in both the primary and the umbrella policies that were issued to the same person providing the same coverage in direct conflict with the language of the umbrella policy.

I conclude that the Aetna excess policy is an "umbrella policy". It provides the named insured with extended coverage for a low premium; it is labelled "excess indemnity policy"; and the named insured must maintain underlying primary insurance. Moreover, the policy provides excess coverage to the insured's homeowners, personal liability, recreational vehicle, and watercraft insurance, in addition to his auto insurance. Thus, coverage under the Aetna excess policy is excess over any "excess provisions arising in regular policies in any manner." *Brocious, supra.*

Admittedly, the language of the Aetna excess policy could more clearly state its true excess nature. In particular, the "other insurance" clause of this policy is devoid of any variation of the phrase "shall not contribute with" noted by the court in *Brocious* and cases cited there.[8] Nevertheless, this deficiency does not change its true nature as an umbrella policy. Moreover, the omission is cured in the liability portion of the policy where coverage is defined as that part of the loss exceeding the "primary limit" which includes the "total of other insurance an insured may collect for any occurrence ..." Use of the word "insured" is critical since, by definition, this includes Pinney, the consensual driver of the named insured's auto.

In *Brocious*, the court sought to give effect to the language of the umbrella poli-

---

**6.** *Brocious* involved a leased vehicle that was insured by three insurance policies, the lessee's and owner's auto insurance policies and the lessee's "Umbrella Policy." Both auto insurance policies provided excess coverage to the accident; therefore, the court was faced with three policies that provided excess coverage. It held that the auto policies provided identical coverage; therefore, proration of their policies was required by their language. *Brocious*, 772 F.2d at 53.

**7.** The "other insurance" clause in the owner's auto policy provided that when the car was leased for commercial purposes, coverage was "excess over any other valid and collective insurance, whether primary, excess or contingent, available to the insured." 772 F.2d at 51 n. 6.

**8.** *See Allstate Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278 (5th Cir.1971); *Aetna Casualty and Surety Co. v. Beane*, 385 So.2d 1087 (Fla.Dist.Ct.App.1980); *Blanchard v. Rodrigue*, 340 So.2d 1001 (La.Ct.App.1976).

cy. The court reasoned that to equate the excess coverage provisions of all three policies would contravene the language of the umbrella policy which was to provide coverage only after exhaustion of the limit of the primary policy. Since there were two primary policies providing identical coverage, the Third Circuit separated them from the umbrella policy. Under our facts, Aetna will not be liable on the excess policy until the limits of the Aetna auto policy are exhausted whether or not the excess policy is prorated with the USAA policy. However, in a different situation, all three policies could provide excess coverage as in *Brocious*.[9] As I have noted, the provisions of the Aetna auto policy and the USAA policy are identical. Thus, under the reasoning of *Brocious*, these policies and the Aetna excess policy should provide different levels of excess coverage. It follows that if the USAA policy and the Aetna excess policy would not be equated in the *Brocious* factual scenario, they should not be equated here.

As I stated earlier, USAA relies solely upon *Transport Indemnity Co. v. Home Indemnity Co.*, 535 F.2d 232 (3d Cir.1976) in support of its motion for summary judgment. While I have reservations about the consistency of *Transport Indemnity* and *Brocious*, the present situation is readily distinguishable from *Transport Indemnity* since there was no determination in *Transport Indemnity* that the excess policy was a true "umbrella policy." No mention is made regarding the nature of the premiums nor is there language to the effect that insurance available to an "insured", as that term is used in the Aetna excess policy, must be exhausted first. In addition, the limit of the primary insurance was relatively low, $10,000, and the primary/excess nature of the two policies is not readily apparent from the language set forth in the opinion. For these reasons, *Transport Indemnity* is not controlling.

In conclusion, the Aetna excess policy is a true umbrella policy; therefore, Aetna is only responsible for any damages that ex-

ceed the limits of the Aetna auto policy and the USAA auto policy. I will, therefore, grant plaintiff's motion for summary judgment.

### ORDER

AND NOW, this 24th day of September, 1987, upon consideration of the parties' cross-motions for summary judgment, it is hereby ordered that the motion of Aetna Casualty and Surety Co. is hereby granted and that defendant is ordered to provide liability coverage up to the $300,000 limit of its policy issued to Burrall A. Pinney, upon the exhaustion of the $250,000 policy limit in the Aetna auto policy issued to H.D. Wilkins.

It is further ordered that judgment is entered in favor of plaintiff and against defendant.

---

9. For example, where a passenger injured in a two car accident where the cars were driven but not owned by insureds of Aetna and USAA, both policies would provide excess coverage.