**CHESTER CARRIERS, INC., Appellee,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Appellant.**

Superior Court of Pennsylvania.

Argued April 12, 2000.

Filed Jan. 10, 2001.

David Barry, Philadelphia, for appellant.

Gaele M. Barthold, Philadelphia, for appellee.

Before CAVANAUGH, J., EAKIN, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

¶ 1 This matter comes before us a second time following remand for the filing of a Trial Court opinion and a supplemental reproduced record. For the following reasons, we reverse. We hereby adopt as follows the facts and history of this case as set forth in our previous memorandum (2837, 2838 EDA 1999, 8/14/00, unpublished memorandum):

> This is an appeal and cross-appeal from an order denying in part and granting in part cross-motions for summary judgment, and granting partial declaratory relief in favor of Chester Carriers, Inc. ("Chester Carriers") and against National Union Fire Insurance Company of Pittsburgh ("National Union") in the amount of two hundred thirty-four thousand and three hundred thirty-three dollars ($234,333). . . .

This appeal stems from a declaratory judgment action initiated in September of 1997 by Chester Carriers against National Union as a result of a dispute concerning National Union's liability to pay "other insurance" benefits under a policy of insurance issued to Paul C. Emery Company ("Emery"). National Union responded with an Answer and New Matter that essentially denied liability, asserted that Chester Carriers lacked standing to bring suit, and claimed that National Union had no obligation to "drop down" and provide coverage because other primary policies were in effect. The declaratory judgment action then proceeded on stipulated facts which are summarized below.

James A. O'Neal operated a truck as an employee of Emery. Emery owned the truck assigned to Mr. O'Neal. Chester Carriers, Inc. leased the use of the truck as well as the services of Mr. O'Neal from Emery to haul for General Crushed Stone, a subsidiary of Chester Carriers.[1] On October 10, 1993, Louis C. Baker and his brother, Barry L. Baker, were walking on Route 113 in Uwchlan Township. While driving the truck owned by Emery but leased to Chester Carriers, Mr. O'Neal struck the Bakers causing severe and permanent injuries to Louis Baker. The injuries required multiple surgeries, and led to the amputation of Louis Baker's left arm and the fusion of his left shoulder. These severe injuries caused Louis Baker to lose actual earnings as well as earning capacity.

Louis Baker filed two separate civil actions in Chester County, Docket Nos. 93–11498 and 95–09409, which collectively sought to recover damages from James O'Neal,[2] Emery, and Chester Carriers. Mr. Baker's complaints both sounded in negligence, and alleged that

---

1. Chester Carriers itself is a subsidiary of Koppers Company, which was at the relevant time, a wholly owned subsidiary of Hansen Industries, Inc.

2. The complaints subsequently were amended to reflect the Estate of James A. O'Neal as defendant. The stipulated facts do not indicate whether Mr. O'Neal died as a result of the truck/pedestrian accident underlying the present appeal or from some other cause.

the accident stemmed solely from the negligent behavior of Mr. O'Neal in operating the truck. The parties to the Louis Baker personal injury litigation agreed to settle the case for one million seven hundred thousand dollars ($1,700,-000). Neither of the parties to the present appeal and cross-appeal disputes the fact that this was a fair and reasonable settlement.

At the relevant times, the Insurance Company of North America ("INA"), insured Chester Carriers. [Paul C. Emery, Co., owner of the truck], carried two insurance policies: one with National Union, and one with Harleysville. Harleysville paid nine hundred ninety-seven thousand dollars ($997,000) toward the Louis Baker settlement on behalf of Emery, its insured. Harleysville also paid three thousand dollars ($3,000) to Louis Baker's brother, Barry. This exhausted the Harleysville policy's "per accident" limit of one million dollars.

Chester Carriers and its insurer, INA, denied responsibility to pay the balance remaining on Louis Baker's settlement which was seven hundred and three thousand dollars ($703,000). They maintained that National Union was liable for the entirety of this amount in its role as alleged excess carrier for Emery. National Union denied responsibility and contended that Chester Carriers and INA were responsible for the full [$703,-000]. National Union concedes that it had knowledge of the litigation with the Bakers, and also concedes that it declined to participate in the settlement proceedings.

On behalf of Chester Carriers, INA paid the $703,000 balance remaining on the settlement with Louis Baker, and obtained releases from Mr. Baker releasing all of the defendants except Emery, and its carrier, National Union. In the Mutual Release of Claims, "Chester Carriers released Emery and O'Neal from all claims, crossclaims, and third-party claims, including specifically, all claims arising out of the Motor Vehicle Equipment Lease Agreement and/or common law indemnification." Stipulation of Facts filed 6/11/99, Stipulated Fact No. 27. In return for its agreement, Chester Carriers, Inc. received an assignment from Emery of all of its rights against its insurer, National Union. *Id.,* Stipulated Fact No. 39. Thus, in exchange for INA paying the $703,000 and obtaining a release for Emery, Chester Carriers obtained an assignment from Emery of all its rights against National Union. National Union was not a party to any of the releases, as it had declined to participate in or defend in the litigation with the Bakers.

Thus the controversy directly underlying this appeal is between Chester Carriers (and its insurer INA) and National Union as to which insurance policy was required to respond after exhaustion of the Harleysville policy. The matter was presented to the Court of Common Pleas pursuant to a declaratory judgment action. The matter did not come to trial, however, as both Chester Carriers and National Union filed motions for summary judgment. On August 16, 1999, the Honorable Paula Francisco Ott denied in part the motions for summary judgment of both parties, and granted judgment in part in favor of Chester Carriers.

Judge Ott found that the INA policy was an "excess coverage" policy which provided a "first layer of excess coverage." *See* Trial Court Order entered August 16, 1999, n. 1. Judge Ott rejected National Union's contention that its policy was a "true umbrella" policy which would only be required to provide coverage in the event that the limits of the INA policy were reached. *Id.* Thereafter, she allocated responsibility to pay the $703,000 on a pro rata basis between INA and National Union.[3]

---

3. Judge Ott found INA two-thirds liable, and National Union one-third liable, and required

Both parties were dissatisfied with the Trial Court's ruling. Chester Carriers filed a timely Appeal at No. 2837 EDA 1999, and National Union filed a timely cross-appeal at No. 2838 EDA 1999. On September 27, 1999, Judge Ott ordered National Union to file a Concise Statement of Matters Raised on Appeal. National Union complied on October 11, 1999. Judge Ott did not direct Chester Carriers to file a Concise Statement, and Chester Carriers filed no such statement *sua sponte.* Judge Ott did not file a Trial Court Opinion.

Chester Carriers raises the following contentions for our consideration at Appeal No. 2837 EDA 1999:

1. Did the trial court err in finding that the liability insurance policies of a truck being operated by the agent of the owner, under a lease agreement, need not be exhausted before requiring the insurer of the lessee of the vehicle to contribute to a bodily injury loss?

2. Did the trial court err in denying Chester Carriers, Inc.'s Motion for Summary Judgment where Chester Carriers, Inc. was only secondarily liable and where Paul C. Emery, Co., Chester Carriers, Inc.'s assignor, contractually agreed to indemnify Chester Carriers, Inc. because National Union Fire Insurance Company of Pittsburgh, Pennsylvania, the liability insurer for Paul C. Emery Co., was obligated to cover Paul C. Emery Co. for liability for damage imposed by law or under contract?

3. Did the trial court err in denying Chester Carriers, Inc.'s Motion for Summary Judgment due to Paul C.

Emery Co.'s failure to fulfill its contractual obligation to procure insurance for Chester Carriers, Inc., where National Union Fire Insurance Company of Pittsburgh, Pennsylvania was obligated to cover Paul C. Emery Co., Chester Carrier, Inc.'s assignor, for liability for damage impose by law or under contract?

Brief of Chester Carriers, at 4. National Union presents a single claim at Cross–Appeal No. 2838 EDA 1999:

1. Did the trial court err in concluding that the INA and National Union policies were competing excess policies (thereby requiring simultaneous contribution) when the INA policy was in fact a primary policy which provided first layer excess coverage under the circumstances, and the National Union policy was a true umbrella policy, not having any coverage obligations until exhaustion of the INA policy limits?

Brief of National Union, at 5.[4]

*Chester Carriers, Inc. v. National Union Fire Insurance Company of Pittsburgh,* 2837, 2838 EDA 1999 (Pa.Super.2000), unpublished memorandum, at 1–6 (footnotes in original).

¶ 2 As we have held, "[s]ummary judgment is warranted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The proper construction of an insurance policy is a matter of law that a court may resolve pursuant to a motion for summary judgment. An appellate court may disturb a trial court's entry of summary judgment where there has been an error of law or clear abuse of discretion." *Harstead v. Diamond State Insurance,*

them to pay four hundred sixty-eight thousand, six hundred seventy-seven dollars ($468,677) and two hundred thirty-four thousand, three hundred thirty-three dollars ($234,333) respectively. *See* Trial Court Order entered August 16, 1999, n. 1. As INA had already expended seven hundred and three thousand dollars ($703,000) on behalf of Chester Carriers, the order essentially re-

quired National Union to reimburse two hundred thirty-four thousand, three hundred thirty-three dollars ($234,333) to Chester Carriers and INA.

4. We note that this issue was raised in National Union's Statement of Matters Raised on Appeal, and is thus preserved for review.

*Co.,* 555 Pa. 159, 162–3, 723 A.2d 179, 180 (1999). Our scope of review is plenary. *Hellings v. Bowman,* 744 A.2d 274 (Pa.Super.1999). "When interpreting an insurance contract, we must consider the parties' intent as manifested by the language of the instrument. Where that language is clear, we apply its terms as written." *Nationwide Insurance, Co. v. Horace Mann Insurance, Co.,* 759 A.2d 9, 11 (Pa.Super.2000).

¶ 3 National Union's single issue and Chester Carriers' first issue both question the Trial Court's decision that, as excess policies, both policies "kick-in" after exhaustion of the Harleysville coverage limits and both are required to contribute to the balance due on the settlement on a pro rata basis. In order to determine when and how each policy applies, we must ascertain the true nature of each. To do this, we must examine the language of each specific policy.

¶ 4 The National Union policy provides:

**I. COVERAGE**

A. We will pay on behalf of the insured that portion of the ultimate net loss in excess of the retained limit as hereinafter defined, which the Insured will become legally obligated to pay as compensatory damages ... because of Personal Injury, Property Damage Liability or Advertising Liability, caused by an occurrence to which this insurance applies, due to

1. liability imposed upon the Insured by law or

2. liability assumed by the Insured under contract as defined and/or restricted in this policy.

\* \* \* \* \* \*

**III. LIMITS OF LIABILITY**

\* \* \* \* \* \*

B. Retained Limit

We will be liable only for that portion of the ultimate net loss in excess of the Insured's retained limit defined as either:

1. the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance, whether or not collectible and the applicable limits of any other underlying insurance providing coverage to the Insured, or

2. the amount stated in the Declarations as Self Insured Retention....

**DEFINITIONS**

\* \* \* \* \* \*

7. "Persons Insured" means each of the following to the extent set forth below:

a. The Named Insured as shown in the Declarations and any subsidiary, owned or controlled company as now or hereafter constituted....

**CONDITIONS**

\* \* \* \* \* \*

10. Other Insurance-if other valid and collectible insurance with any other insurer is available to the insured covering loss also covered hereunder, this insurance shall be excess of, and shall not contribute with, such other insurance....

*See* National Union Insurance Policy, Exhibit 6 in Appendix to Motion for Summary Judgment of Defendant National Union Fire Insurance Company, filed 6/11/99, Docket entry 11. The named insured in the declarations to the National Union policy is Paul C. Emery Co., Inc. *Id.*

¶ 5 The INA policy provides:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.

\* \* \* \* \* \*

**SECTION II—LIABILITY COVERAGE**

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the

ownership, maintenance or use of a covered "auto".

\* \* \* \* \* \*

1. Who Is An Insured

The following are "insured":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow. . . .

**SECTION IV—BUSINESS AUTO CONDITIONS**

\* \* \* \* \* \*

**B. General Conditions**

\* \* \* \* \* \*

5. Other Insurance

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

*See* Insurance Company of North America policy, Exhibit 4 in Appendix to Motion for Summary Judgment of Defendant National Union Fire Insurance Company, filed 6/11/99, Docket entry 11. The named insured in the declarations to the INA policy is Hanson Industries. *Id.*

¶ 6 Neither party has cited, and we have been unable to find, Pennsylvania caselaw on point in this matter.[1] In its brief, National Union directs our attention to *Occidental Fire and Casualty Company of North Carolina v. Brocious,* 772 F.2d 47 (3d Cir.1985) and *Aetna Casualty and Surety Co. v. United Services Automobile*

*Association,* 676 F.Supp. 79 (E.D.Pa.1987), two federal cases applying Pennsylvania law. While we recognize that federal district court and appeals court decisions are not binding on this Court, we do find the reasoning in these cases to be persuasive. *Willard v. Interpool,* 758 A.2d 684 (Pa.Super.2000) (federal court decisions persuasive, but not binding).

¶ 7 In *Brocious,* Tobias ("Seller") agreed to the conditional sale of a tractor-trailer to Brocious. Seller retained title until the full price was paid, but Brocious took possession of the vehicle. Brocious contacted Occidental, an insurance company, which issued an insurance policy covering the vehicle wherein Seller was listed as owner and Brocious as a driver.[2] Brocious leased the vehicle to Doan Mining which then employed Brocious as its driver. Doan's insurer, Buckeye Union, issued two policies to Doan, one for $1,000,000 and one for $20,000,000. An accident subsequently occurred while Brocious was hauling coal for Doan, resulting in the death of a third party. Occidental brought a declaratory judgment action in federal court to determine its duty to defend and indemnify Brocious, then filed a motion for summary judgment claiming, *inter alia,* that its policy was excess to the Buckeye policies issued to the lessee of the vehicle, Doan. In response, Buckeye also moved for summary judgment on the ground that its policies were excess to Occidental's policy. The Third Circuit Court of Appeals determined that both Buckeye and Occidental provided excess insurance; that their policies contained competing excess clauses.[3]

---

1. Both parties have cited several Pennsylvania cases pertaining to competing excess insurance clauses. Because we do not believe that the policies in the case *sub judice* contain competing excess clauses, we will not address those cases.

2. The appeals court determined that Brocious was a person insured under the Occidental policy.

3. The Occidental policy provided: "(d) With respect to (1) any automobile of the commercial type while leased or loaned to any person

or organization, other than the named insured, engaged in the business of transporting property by automobile for others . . . the insurance under this endorsement shall be excess over any other valid and collectible insurance, whether primary, excess or contingent, available to the insured." *Id.* at 51 n. 6. The $1,000,000 Buckeye policy provided: "For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance. . . ." *Id.* at 52 n. 7.

*Id.* at 53. As a result of this finding, the policies were held to apply equally and the amount due was to be prorated between them. The parties then disagreed as to how to prorate the amount to be paid and the issue before the appeals court was whether both Buckeye policies should be added together for proration. The court reasoned as follows:

In determining whether Buckeye's $20,000,000 umbrella policy should be used in the proration, we note that umbrella policies are sold at comparatively modest prices to pick up where primary coverages end in order to provide extended protection. Because such polices are not an attempt by a primary insurer to limit a portion of its risk by labeling it "excess" nor a device to escape responsibility, they are regarded as a "true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses."

The $20,000,000 Buckeye policy, clearly titled an umbrella policy, contains different language in its "other insurance" provision than does either the Occidental or the $1,000,000 [Buckeye] policy. The policy states that it "shall be excess of and shall not contribute with" other insurance.... [4]

Buckeye's umbrella policy provides that its liability shall be only for the ultimate net loss in excess of:

(a) the underlying limits of liability of the underlying insurance policies as stated and described in the declarations and those of any underlying insurance collectible by the insured as to each occurrence insured by said underlying policies of insurance....

*Id.* at 53–54 (citations omitted) (footnote added).

¶ 8 The court held that both the Occidental and the $1,000,000 Buckeye policy

had to be exhausted before the Buckeye umbrella policy could be applied. *Id.* at 54. Any other holding would negate the umbrella language which provided that the coverage was in excess of the limits of the underlying insurance; the underlying insurance in this case being the Occidental and the $1,000,000 Buckeye policies. *Id.; See also Aetna Casualty, supra,* at 81.

¶ 9 In *Aetna Casualty, supra,* the federal district court relied on *Brocious* to arrive at its decision regarding the applicability of an umbrella policy. In that case, "[a]n automobile owned by H.D. Wilkins and driven by Marguerite Pinney was involved in an accident ... Wilkins was protected by two Aetna insurance policies, a personal auto policy that covered the vehicle involved in the accident and a 'Personal Excess Indemnity Policy.' The driver, Pinney, was a 'covered person' under a USAA auto policy." *Id.* at 80. Wilkins' Aetna *auto* policy provided for $250,000 in primary coverage to be prorated with other applicable insurance. Wilkins' Aetna *excess* policy provided him "with an additional $1,000,000 in coverage on the condition that he maintain primary auto coverage in the amount of $250,000. The premiums for this policy were low compared to the coverage limit. The excess policy covered 'the insured for the part of the loss that exceeds the primary limit'. 'Primary limit' is defined as 'the total of other insurance an insured may collect for any occurrence, including amounts for primary insurance policies'." *Id.* "Finally, the Aetna excess policy states, 'this insurance is always excess over any other insurance which covers any part of the loss'." *Id.* Pinney's USAA policy provided for $300,000 of excess coverage when Pinney was driving a vehicle she did not own.

¶ 10 Aetna's auto policy provided primary coverage and was responsible for the

4. The provision reads: "If other valid and collectible insurance with any other insurers applicable to any loss or expense covered by this policy is available to the insured ... the

insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance." *Id.* at 52 n. 8.

first $250,000 in damages. The parties disagreed as to who was responsible for the remaining damages. Aetna argued that its excess policy was an umbrella policy and should not be applied until all other applicable insurance has been exhausted. "An 'umbrella policy' is defined as a policy of insurance 'sold at comparatively modest cost to pick up where primary coverages end, in order to provide an extended protection....'" *Id.* The district court, relying on *Brocious*, found the Aetna excess policy to be an umbrella policy. "It provides the named insured with extended coverage for a low premium; it is labeled 'excess indemnity policy'; and the named insured must maintain underlying primary insurance." *Id.* at 81. The district court noted that the Aetna excess policy lacked the phrase "shall not contribute with" which was noted by the *Brocious* court, however, it held that the omission was "cured in the liability portion of the policy where coverage is defined as that part of the loss exceeding the 'primary limit' which includes the 'total of other insurance an insured may collect for any occurrence ...' Use of the word 'insured' is critical since, by definition, this includes Pinney, the consensual driver of the named insured's auto." *Id.*

¶ 11 The district court concluded that, as an umbrella policy, the Aetna excess policy was only responsible for damages that exceeded the limits of the Aetna auto policy and the USAA auto policy. *Id.*

¶ 12 In the case *sub judice*, we find the National Union policy to be strikingly similar to the umbrella policies in *Brocious* and *Aetna Casualty*. The National Union policy declarations are titled "Commercial Umbrella Declarations." *See* National Union Insurance policy, *supra*. The yearly premium is relatively low, $10,200 for $1,000,000 of coverage. *Id.* In comparison, the INA policy premium is $4,409,697 for $2,000,000 of coverage.[5] *See* Insurance Company of North America policy, *supra*. Like the Buckeye umbrella policy in *Brocious*, the NATIONAL UNION policy states that it "shall be excess of, and not contribute with" other insurance. *See* National Union policy, Conditions ¶ 10, *supra*. Also like the Buckeye policy, the National Union policy provides that its liability shall be for the "ultimate net loss in excess of" the limits of the underlying policies providing coverage to the insured. *Id.*, at I A, III B(1). As in *Aetna Casualty*, the named insured is required to maintain underlying insurance. Additionally, all three policies, National Union, Buckeye, and Aetna, "pick up where primary coverages end, in order to provide extended protection." *Brocious*, *supra*, at 53; *See also Aetna Casualty*, *supra*, at 80. The primary coverages in the case *sub judice* are the underlying insurance listed in the Schedule of Underlying Insurance, Harleysville, and other valid and collectible insurance with any other insurer available to the insured: namely, the INA policy.[6] National Union policy, *supra*, at III B(1).

¶ 13 The INA policy contains no such similar provisions. It merely states that "[f]or any covered auto you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." *See* Insurance Company of North America policy, *supra*, at IV B(5). The auto involved in this case was not owned by Chester Carriers; therefore, its coverage is excess. This is an ordinary excess

---

**5.** We recognize that the National Union policy covers only about 27 vehicles (through the underlying Harleysville Commercial Auto policy) and the INA policy covers approximately 12,640 autos. Thus, both policies charge approximately the same premium per vehicle, however, the National Union policy covers two other policies in addition to the Harleysville Commercial Auto policy. Also covered by National Union is a commercial general

liability policy with $2,000,000 of aggregate coverage and an employers liability policy with a $500,000 coverage limit. Hence, the National Union premium is much less than the INA premium given the scope of coverage.

**6.** Pursuant to Section II A.1(b), coverage under the INA policy is available to Emery.

insurance clause [7] and does not indicate in any way that the INA policy is intended to provide umbrella coverage as opposed to ordinary excess coverage. Thus, we believe that the Trial Judge committed an error of law when she found National Union liable for one third of the outstanding balance of the settlement. The National Union policy is an umbrella policy and is not required to pay out until the limits of the underlying policies, Harleysville and INA, have been exhausted.

¶ 14 Chester Carriers next argues that the Trial Court erred in denying summary judgment in its favor where Emery was contractually obligated to indemnify Chester Carriers. Chester Carriers' brief refers us to paragraph seven (7) of the motor vehicle lease between Chester Carriers and Emery which provides:

> 7. OWNER LESSOR [Emery] agrees to save CARRIER LESSEE [Chester Carriers] harmless from all costs and expenses, whether or not specifically covered herein, incurred by CARRIER LESSEE by reason of the operation of said equipment leased hereunder, including costs resulting from spillage of products transported....

*See* Motor Vehicle Equipment Lease, Exhibit 1 in Appendix to Motion for Summary Judgment of Defendant National Union Fire Insurance Company, filed 6/11/99, Docket entry 11.

¶ 15 "It is well established that before indemnification rights accrue, the party seeking indemnification must pay the claim or verdict damages before obtaining any rights to pursue an indemnification recovery." *Beary v. Container General Corp.*, 390 Pa.Super. 53, 568 A.2d 190, 193

(1989). The damages in this matter were paid by INA, not by Chester Carriers, and Chester Carriers has cited no statute or caselaw in its brief that allows it to seek indemnification on behalf of its insurer. Thus, we find Chester Carriers' claim of contractual indemnity to be meritless.

¶ 16 Chester Carriers next claims that it is "entitled to common law indemnity from Emery, and, as assignee of Emery's rights against its insurer, National Union, the trial court should have granted [Chester Carriers'] claims because National Union was obligated to pay on behalf of Emery compensatory damages for liability imposed by law or contract." Chester Carriers' Brief at 19. We find this claim to be rather convoluted. Chester Carriers appears to be arguing that National Union is obligated to pay compensatory damages on behalf of Emery, therefore, National Union is obligated to pay compensatory damages to Chester Carriers as Emery's assignee. As we held above, National Union does have an obligation to pay on behalf of Emery, but only after the INA policy limits have been exhausted. Alternatively, Chester Carriers may be arguing that Emery is obligated to pay Chester Carriers because Chester Carriers "has been compelled, by reason of some legal obligation to pay damages occasioned by the negligence" of Emery. *Id.* Chester Carriers has not paid damages on behalf of Emery because of Emery's negligence, thus this claim is meritless.

¶ 17 Finally, Chester Carriers argues that the Trial Court erred in denying summary judgment where Emery failed to fulfill its obligation to procure insurance for Chester Carriers. This claim refers to

7. *See* Harleysville policy, *supra,* IV.5(a) (setting forth identical excess clause); *Nationwide v. Horace Mann,* 759 A.2d 9, 11 (Pa.Super.2000) (Mann insurance policy held to provide ordinary excess coverage provides "[i]f insured is using a ... non-owned car, our liability insurance will be excess over other collectible insurance."); *Brocious,* 772 F.2d at 52 n. 7 (Buckeye $1,000,000 policy held to provide ordinary excess coverage provides "For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance...."); *Aetna Casualty,* 676 F.Supp. at 80 n. 2 (USAA policy held to provide ordinary excess coverage provides that "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.").

paragraph six (6) of the motor vehicle lease which provides:

6. OWNER LESSOR [Emery] further agrees to:

(a) Procure and maintain automobile liability insurance with respect to the vehicle listed on page one of the lease agreement with the following limits: $300,000 each person and $500,000 each occurrence for bodily injury and $300,000 each occurrence for property damage. CARRIER LESSEE [Chester Carriers], Koppers Company, Inc., and Subsidiaries thereof, are to be included as an additional insured under the policy of insurance covering the vehicle identified in clause one and it is understood that this coverage is to be primary over any coverage CARRIER LESSEE may have in force; . . . .

*See* Motor Vehicle Equipment Lease, Exhibit 1 in Appendix to Motion for Summary Judgment of Defendant National Union Fire Insurance Company, filed 6/11/99, Docket entry 11.

¶ 18 It is undisputed that Emery maintained liability insurance on the vehicle in question with coverage well in excess of the agreed upon limits. *See* Harleysville policy, *supra.* The coverage was primary over Chester Carriers' coverage and its limits were exhausted before Chester Carriers' coverage was implicated. Although Chester Carriers was not listed as a named insured, the insurance maintained by Emery fulfilled the goal of paragraph six (6) of the lease which was to provide primary liability insurance for the vehicle in order to shield Chester Carriers from primary liability. Chester Carriers was provided with far more protection than it had requested. Hence, this claim is meritless.

¶ 19 In conclusion, we find that the National Union policy is an umbrella policy and is not required to pay out until the coverage limits of the INA policy are exhausted. Thus, INA is liable for the full amount due on the settlement, $703,000, and is not entitled to indemnity from Na-

tional Union or Emery. Accordingly, we reverse the order of the Trial Court.

¶ 20 Order reversed. Remanded for proceedings consistent with this opinion. Jurisdiction relinquished.