

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-2007

# White v. Continental Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1729

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"White v. Continental Ins Co" (2007). *2007 Decisions.* Paper 1276.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1276

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Case No:  06-1729

CASEY D. WHITE

v.

CONTINENTAL INS CO; ENCOMPASS INDEMNITY;
GREAT NORTHERN INSURANCE COMPANY;
CHUBB GROUP OF INSURANCE COMPANIES


Great Northern Insurance Company,
Appellant

_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No.: 04-cv-1523
District Judge: The Honorable A. Richard Caputo

_____


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 12, 2007

Before: SMITH and COWEN, *Circuit Judges*,
and YOHN, *District Judge*[*]

(Filed: April 17, 2007 )


_____


_____

[*]The Honorable William H. Yohn, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

OPINION
_____

SMITH, *Circuit Judge*.

This case is a dispute between two insurers over who should pay the first tier of excess coverage for injuries sustained by a third party in a vehicle accident. Appellant Great Northern Insurance Company (Great Northern) argues that the District Court erroneously granted Continental Insurance Company's (Continental) Motion for Summary Judgment. Because we conclude that the District Court was correct in holding that Great Northern solely occupied the first tier of excess coverage, we will affirm.

I.

On August 17, 2001, Casey White was injured in an automobile accident while a passenger in a 1996 Jeep Cherokee. David Euler, a family member of the vehicle's owners, Robert and Regina Euler, had given permission to Michael Ahearn to operate the vehicle. The Eulers were New York residents. Ahearn resided with his parents in Pennsylvania at the time of the accident, and was at the wheel when the accident occurred.

On May 17, 2004, White sued David, Robert, and Regina Euler, as well as Michael Ahearn. The Eulers were insured under Continental's USP Deluxe Package. This policy provided: 1) primary automobile insurance with $250,000 of liability coverage; and 2) Optional Excess Liability Coverage up to $2.5 million. Ahearn was insured by Great Northern under a primary automobile insurance policy that provided

2

$500,000 of initial liability coverage.

Continental tendered the entire $250,000 in primary coverage to the plaintiff, but the parties have stipulated that White's civil action had a value in excess of $250,000. Because of this stipulation, on June 15, 2004, White filed a Declaratory Judgment Action in the Court of Common Pleas of Lackawanna County, seeking a determination as to which carrier must provide the next layer of coverage. On July 14, 2004, Great Northern removed the action to federal court in the Middle District of Pennsylvania. On September 10, 2004, Continental and Great Northern filed Cross Summary Judgment Motions. The District Court granted Continental's motion for summary judgment and denied Great Northern's motion for summary judgment. The District Court held that Great Northern occupied the first tier of excess coverage alone, because Continental's Optional Excess Liability Coverage was umbrella coverage.

II

We exercise plenary review over an order granting summary judgment and an interpretation of an insurance contract.[1] *See Alexander v. Nat'l Fire Ins. of Hartford*, 454 F.3d 214, 219 n.4 (3d Cir. 2006) (citations omitted); *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (stating that "the interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court, a question over

_____

[1]The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441(a). We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Both parties agree that Pennsylvania law applies.

3

which we exercise plenary review").

For our review of an order granting summary judgment, we "apply the same standard that the District Court should have applied." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 441 F.3d 141, 146 (3d Cir. 2005) (internal citations omitted). A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). This Court will, in applying this standard, "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Shuman*, 441 F.3d at 146.

III.

1. The Insurance Contracts

For purposes of clarification, we will list some of the relevant provisions of the Great Northern and Continental insurance policies.

A.      Great Northern's Other Insurance clause (the driver's insurer)

Vehicles: When other liability insurance applies to covered damages, we will pay our share. Our share is the proportion that the amount of coverage under this policy bears to the total of all applicable amounts of coverage. *However, for non-owned motorized land vehicles, this insurance is excess over any other insurance, except that written specifically to cover excess over the amount of coverage in this policy.*

Personal and Excess: This insurance is excess over any other insurance except that written specifically to cover excess over the amount of coverage that applies in this policy.

4

B.      Various Clauses from Continental's Optional Excess Liability Coverage Policy (the vehicle owner's insurer)

Insuring Agreement

We will pay damages ... up to the limit of liability shown in the Coverage Summary for "Optional Excess Liability". Any payment is subject to the *minimum retained limit* ... and the other provisions of this endorsement.

Limit of Liability

You must maintain *underlying insurance* for each exposure shown in the Coverage Summary for "Optional Excess Liability", with not less than the liability limits shown in the *Minimum Retained Limit* definition. Except as provided in Provision 3, Self Insured Retention, under the General Provisions Optional Excess Liability Coverage Endorsement, we will pay only the difference between:

1. The *Minimum Retained Limit* amount shown in the Coverage Summary; and

2. The total of what you legally have to pay;

and in no case more than the limit shown in the Coverage Summary for "Optional Excess Liability".

NOTE: The *Minimum Retained Limit* will be satisfied in regard to any exposure(s) for which you maintain the *underlying insurance* as part of [the Continental Policy] with which this endorsement is issued.

Minimum Retained Limit means the greater of:

a. The total limits of any other insurance that applies to the *occurrence* which:

(1) Are available to a *covered person;* or

(2) Would have been available except for the bankruptcy or insolvency of the insurer providing the *underlying insurance;* or

b. The "Minimum Retained Limit" amount shown in the Coverage Summary.

Other Insurance

Only in regard to the coverage provided by this endorsement, the Other Insurance provision of the policy's "GENERAL PROVISIONS" is deleted and replaced by the following:

When there is other applicable insurance, we will provide coverage as follows:

* * *

b. During the first and subsequent years of this policy, when an amount of "Optional Excess Liability" is shown effective in the Coverage Summary, the coverage provided by this endorsement is excess over any other valid and collectible insurance *except:*

(1) When other insurance is written specifically as excess coverage over the minimum retained limit, we will pay only our share of the loss. Our share is the proportion that our limit of "Optional Excess Liability" bears to the total of all applicable limits.

(2) When other insurance is written specifically as excess coverage over the amount shown in the Coverage Summary for "Optional Excess Liability", we will pay amounts due above:

    (a) The *minimum retained limit;*
    (b) The Self Insured Retention; or
    (c) The Excess Loss Assessment threshold;

up to our "Optional Excess Liability" limit.

2.      The Parties' Positions

    A.    Great Northern

Great Northern argues that, with respect to non-owned vehicles, Continental must occupy the first tier of excess coverage because the Great Northern policy explicitly states that it is "excess over any other insurance." Because Ahearn drove a car he did not own, Continental alone is responsible for the first tier of excess coverage as "other insurance." According to Great Northern, this clear and unambiguous statement renders improper the District Court's decision to look to the nature and design of the Continental policy rather

6

than the plain language in both the Great Northern and Continental policies. Great Northern then proceeds to argue that Continental's excess coverage is *not* a separate policy or an umbrella policy, so that "[t]he coverage provided under the Continental Policy clearly contemplated seamless coverage for auto liability claims between the policy's primary and excess coverages." To draw this conclusion, Great Northern points to the statement in the Continental policy that "[w]e will pay damages ... up to the limit of liability shown in the Coverage Summary for 'Optional Excess Liability'. Any payment is subject to the *minimum retained limit* ... and the other provisions of this endorsement." Because Great Northern defines the minimum retained limit as the primary coverage, it concludes that the excess coverage is triggered immediately after the primary coverage is exhausted. Further, the "Other Insurance" clause of the Continental policy does not change this analysis because the Great Northern policy did not come within the purview of "other insurance." The "Other Insurance" clause states that the Great Northern coverage must be applicable, valid, and collectible in order for it to displace the Continental policy as the first tier of excess coverage.

B.      Continental

Continental argues that Great Northern's coverage must be exhausted before Continental's coverage is triggered. Continental notes that the Great Northern policy states that its policy "is excess over any other insurance, except that written specifically to cover excess over the amount of coverage in this policy." Continental then argues that its

7

excess policy was "written specifically to cover excess over the amount of coverage in this policy." As evidence, Continental points to its policy, which states that the policy is "subject to the minimum retained limit." "Minimum retained limit" is defined in relevant part as "[t]he total limits of any other insurance that applies to the *occurrence* which: (1) Are available to a *covered person;* or (2) Would have been available except for the bankruptcy or insolvency of the insurer providing the *underlying insurance*." Because Ahearn was a "covered person" under the Great Northern policy–which qualifies as "any other insurance"–Continental argues that Great Northern constitutes "Other Insurance" under the Continental policy.

3.      The Major Relevant Cases

A.      *Harleysville v. Aetna*

In *Harleysville Ins. Cos. v. Aetna Cas. & Sur. Ins. Co.*, 795 A.2d 383 (Pa. 2002), Owner X gave permission to Grandson Y to use a truck. Grandson Y subsequently allowed Driver A to drive the truck with Passenger B. The truck crashed, and Passenger B sued Driver A. Three insurance policies were at issue: 1) Owner X had a primary policy (Pennland policy) with liability limits of $300,000, a blanket excess liability policy of up to $1,000,000 (Harleysville policy), and the mother of Driver A had a policy with liability limits of $250,000 (Aetna policy). Following a settlement agreement and arbitration, Passenger B was awarded $550,000. Pennland paid its $300,000, and Harleysville tendered the other $250,000, reserving its rights against Aetna. The major

8

disagreement in the case centered on the interpretation of "other insurance" clauses in the Harleysville and Aetna policies. The Aetna policy's other insurance clause stated that "any insurance we provide for a vehicle you do not own shall be excess over *any other collectible insurance*." The Harleysville policy's other insurance clause stated that its insurance "shall be excess insurance over any valid and collectible *primary* insurance." While the Supreme Court of Pennsylvania "agree[d] that the Harleysville policy does contain some of the indicia of a traditional excess liability policy," so that it should not operate solely as insurer of the first tier of excess coverage, the Court stated that "the standard for interpreting insurance policies does not allow us to focus solely on the nature of the policy and ignore the plain meaning of the policy terms." 795 A.2d at 386-87. Because the Aetna policy was not primary insurance, the Court concluded that the Harleysville policy occupied the first tier of excess coverage by itself after the Pennland policy. This case stands for the proposition that, when the plain language of an insurance policy is unambiguous, a court may not look to the design or nature of the policy as a matter of insurance contract interpretation.

      B.    *Occidental v. Brocious; Chester Carriers, Inc. v. Nat'l Union*; *Aetna v. United Services Auto. Ass'n*

These three cases all stand for the proposition that umbrella policies are insurance policies of a last resort, with their coverages to be applied after any primary and excess policies' coverages have been exhausted. *See Occidental Fire & Cas. Co. of N.C. v. Brocious*, 772 F.2d 47 (3d Cir. 1985); *Chester Carriers, Inc. v. Nat'l Union Fire Ins. Co.*

*of Pittsburgh*, 767 A.2d 555 (Pa. Super. 2001); *Aetna Cas. and Sur. Co. v. United Services Auto. Ass'n*, 676 F.Supp. 79 (E.D.Pa. 1987). These cases all looked to the language of the policies to determine whether or not they were umbrella policies. In *Brocious*, for example, this Court noted that umbrella policies are sold for comparatively low premiums, usually require a policyholder to maintain underlying coverage, and often have language indicating that it is an excess policy of last resort (i.e., an umbrella policy). 772 F.2d at 53-54; *Chester Carriers*, 767 A.2d at 562; *Aetna*, 676 F.Supp. at 80-81. The courts in these three cases predicted what Pennsylvania law would be on this issue, because they were pre-*Harleysville* and the Supreme Court of Pennsylvania had not yet spoken on the precise issue of when a court may look to the design and nature of an insurance policy.

      C.     How the parties view the cases

Great Northern argues that *Harleysville* overruled *Brocious*, *Chester Carriers*, and *Aetna*. Continental argues that *Harleysville* did not affect the rulings in those cases at all, because the excess policies in those cases did "not specify that its coverage is excess only over primary insurance, as did the Harleysville policy." For reasons stated below, we agree with Continental.

4.     The District Court decision

The District Court concluded that Great Northern exclusively occupied the first tier of excess coverage and granted Continental's motion for summary judgment while denying Great Northern's motion for summary judgment. The District Court concluded

that, based on the nature and design of the Continental policy, it was an umbrella policy only to be used as a last resort.

5.    Analysis

We conclude that the District Court properly looked to the nature and design of the Continental policy to determine that it was an umbrella policy.  The first question we must look at is the proper scope of the *Harleysville* decision.  *Harleysville* states that "the standard for interpreting insurance policies does not allow us to focus *solely* on the nature of the policy and ignore the plain meaning of the policy terms."  795 A.2d at 386-87 (emphasis added).  "To the contrary, the polestar of our inquiry is the language of the insurance policy."  *Id*. at 387 (quotation and punctuation omitted).  Accordingly, under *Harleysville*, a court is permitted to look to the nature of an insurance policy unless, in doing so, it would be ignoring the plain meaning of the policy terms.  Further support for this conclusion arises from the fact that the *Harleysville* Court distinguished rather than rejected the reasoning in *Brocious*, *Chester Carriers*, and *Aetna*.  The Supreme Court of Pennsylvania in *Harleysville* stated that:

> In each of those cases, the courts considered both the language and the nature of the policy.  However, we do not reach the same result as in those cases for the simple reason that the 'other insurance' provisions in those policies did not specify that coverage was excess only over 'primary insurance', as does the Harleysville policy.   Given the plain terms of the policies in the case *sub judice*, we conclude that the limits of the Harleysville policy must be exhausted before the Aetna policy is implicated.

795 A.2d at 262.  Put differently, the Supreme Court of Pennsylvania did not hold that

11

*Brocious*, *Chester Carriers*, and *Aetna* were wrongly decided. Rather, the Court distinguished these cases because the policy language in the excess policies was not as clearly stated as the policies at issue in *Harleysville*. The difference between the excess policy at issue in *Harleysville* was that it, unlike the policies in *Brocious*, *Chester Carriers*, and *Aetna*, explicitly stated that the insurance "shall be excess insurance over any valid and collectible *primary* insurance." As a result, the plain language of the policy mandated that the Harleysville policy occupy the first tier of excess coverage alone–immediately after the primary policy.

The second question we must look at is how the Continental policy meshes with this interpretation of *Harleysville*. To begin, the Continental policy may be distinguished from the Harleysville policy because it contains no language that triggers coverage immediately upon the exhaustion of primary coverage. Continental's Optional Excess Liability Coverage policy states that it is triggered only upon exhaustion of the minimum retained limit. This phrase is defined in relevant part as the "total limits of any other insurance that applies to the occurrence which are available to a covered person." The Great Northern policy qualifies as "other insurance" as the phrase is used in the Continental policy. The Great Northern policy states that "for non-owned motorized land vehicles, this insurance is excess over any other insurance, except that written specifically to cover excess over the amount of coverage in this policy." Read together, the Continental policy qualifies as insurance "written specifically to cover excess over the amount of coverage in this policy," so that the Great Northern policy falls under the

12

Continental policy's minimum retained limit. In this sense, the two policies are not irreconcilable. *Cf. Am. Cas. Co. of Reading, Pa. v. PHICO Ins. Co.*, 702 A.2d 1050, 1053-54 (Pa. 1997) ("We find that the insurance contracts are unhelpful in determining this matter since the 'other insurance' clauses of each of the subject policies are irreconcilable and mutually exclusive. Each insurance company declares in its policy that where other insurance covers the loss, that other insurance must pay first.").

Because the language in the policies is not as clear as, for example, the policy at issue in *Harleysville*, we are permitted to look at the nature and design of the Continental policy. It is an umbrella policy. As the District Court noted, the Excess Coverage provides $2.5 million in extended coverage for a low premium, the policy required the insured to carry underlying insurance, and the policy was labeled as "*Optional* Excess Protection." Having concluded that the Continental policy is an umbrella policy, it is clear that the District Court made the proper decision to presume that Great Northern occupied the first tier of excess coverage unless the policies said otherwise.

## IV.

We will affirm the District Court's opinion because it properly interpreted the scope of the Supreme Court of Pennsylvania's decision in *Harleysville*.

13